## POWELL v. JOHN E. HUGHES ORPHANAGE.

June 16, 1927.

1. LANDLORD AND TENANT—*Action for Breach of Contract to Repair—Evidence—Res Inter Alios Acta.*—In an action by lessor against lessee upon a covenant to leave the premises in good repair, the court refused to admit in evidence a letter from attorneys of a prior lessee of the property to the defendant, an officer of the prior lessee. In referring to the property leased by defendant, the letter said: "If you want to assign them to your new company, all it will be necessary for you to do will be to execute a similar form of assignment as that executed by the John E. Hughes Orphanage." This was the only reference to the property leased by defendant. Not a word was said about any release from his covenants.

   *Held:* That the letter was properly excluded as *res inter alios acta.* But even if it was error to exclude it, it was harmless error as the letter contained nothing to show that defendant was ever released from his covenant to repair

2. APPEAL AND ERROR—*Exceptions, Bill of—Instructions—Statement of Objections to Instructions—Rule 22 of the Supreme Court of Appeals—Case at Bar.*—In the instant case, the bill of exceptions which contained the instructions did not state the objections to the instructions given for defendant in error, and it was argued that such objections could not be considered by the Supreme Court of Appeals under Rule 22. Nine instructions were given for defendant in error. In the written opinion of the judge of the trial court, the judge stated that instructions 2, 3, 5, 7 and 8, given for the defendant in error, were objected to by the plaintiff in error and the grounds of the objections. The objection to instruction 4 for the defendant in error was shown by the request of the plaintiff in error for instruction 3 which propounded the contrary theory and which was refused. The objection to defendant's in error instructions 1 and 4 clearly appeared from other portions of the record.

   *Held:* That none of the objections to the instructions for the defendant in error except 6 and 9 were within Rule 22 of the Supreme Court of Appeals.

3. LANDLORD AND TENANT—*Parol Evidence—Prior Negotiations—Case at Bar.*—In an action by a landlord against a tenant on tenant's cove-

nant to leave the premises in good repair, instructions for plaintiff were objected to as taking away from the jury the consideration of all evidence tending to show that the parties "originally intended" that the tenant's assignee was to be completely substituted for the tenant in the lease and that the tenant should be released from his covenant to leave the property in good repair. This objection was not sound as it was wholly immaterial what the parties "originally intended." When they entered into the contract of lease, all prior negotiations on the subject covered by the contract, oral or written, all prior understandings, intentions and agreements became merged in the contract, and the contract became the sole memorial of the· agreement of the parties.

4. LANDLORD AND TENANT—*Covenant to Repair—Collapse of Building— Instruction Making no Reference to Defendant's Theory of the Case— Case at Bar.*—The instant case was an action by a landlord on tenant's covenant to leave the premises in good repair. The building had collapsed. The theory of the plaintiff was that the collapse was caused by overloading by the tenant, while the theory of the defendant was that the collapse was caused by structural defects· in the foundation piers, not discoverable by defendant, for which he was not responsible. There was abundant evidence to support either theory. Defendant objected to an instruction for plaintiff· which dealt with the subject of overloading but made no reference to what would constitute an overload under the circumstances of· the case. Evidence for the defendant tended to show that if the piers had been what they appeared to be, there would have been no overloading of the piers. The omission of all reference of this feature of the case, it was claimed, made the instruction misleading. Plaintiff was simply stating its side of the case and defendant was amply protected and his theory of the case fully presented by other instructions. The instructions read together could not have left the jury in doubt as to the issue presented to them.

*Held:* No error.

5. LANDLORD AND TENANT—*Covenant to Leave Premises in Good Repair— Burden of Proof.*—In an action by a landlord against a tenant on tenant's covenant to leave the premises in good repair, where the building collapsed, the burden of proof was on the tenant to show that the building fell through no fault or negligence of his.

6. LANDLORD AND TENANT—*Duty of Landlord to Discover and Apprise Tenant of Hidden Defects.*—A landlord does not owe to his tenant the duty of actively exerting ordinary care at the time of the leasing of the property to discover and apprise the tenant of hidden defects on the premises, if any there are. In the absence of actual knowledge on the part of the landlord of a defective condition of the premises,. the tenant takes the risk of the premises as they are and the fact.

that the landlord knew for what purposes the premises were to be used by the tenant does not change the rule.

7. LANDLORD AND TENANT—*Implied Warranty—Suitability of Premises for Purpose of Tenant.*—The general doctrine of the law is that on the demise of a house or lands there is no covenant or warranty implied that the premises shall be fit and suitable for the use for which the lessee requires them, whether for habitation, occupation, or cultivation.

8. LANDLORD AND TENANT—*Caveat Emptor—Duty of Tenant to Determine Safety and Adaptability of Property.*—In the absence of warranty, deceit or fraud on the part of a landlord, the rule of *caveat emptor* applies to leases of real estate, the control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability to the purposes for which they are hired.

9. APPEAL AND ERROR—*Objections to Instructions—Ground of Objection—Rule 22 of the Supreme Court of Appeals.*—Under Rule 22 of the Supreme Court of Appeals, where the ground of objection to an instruction nowhere appears in the record, the objection cannot be considered.

10. LANDLORD AND TENANT—*Duty of Tenant—Reasonable Care in Use of Premises—Transfer of Duty.*—It is the duty of the tenant to exercise reasonable care in his use of the premises to the end that they may not be damaged by such use as he makes of it. The tenant cannot relieve himself of this duty nor transfer it to another person.

11. LANDLORD AND TENANT—*Covenant to Leave the Premises in Good Repair—Common Law—Section 5180 of the Code of 1919—Instructions.*—At common law, tenant's covenant to leave the premises in good repair was not a covenant to use due care to leave the premises in good repair, but an absolute covenant to so do, which imposed upon the tenant a nonassignable duty from which he could not relieve himself by the employment of an independent contractor or otherwise. But the common law rule has been radically changed by section 5180 of the Code of 1919, and liability of the tenant, under the statute, becomes a question of his negligence and an instruction which imposes upon the tenant the common law duty is erroneous.

12. LANDLORD AND TENANT—*Covenant to Leave the Premises in Good Repair—Section 5180 of the Code of 1919—Case at Bar.*—In the instant case, an action by a landlord on tenant's covenant to leave the premises in good repair, it was not claimed that there were any other words in the lease showing an intent on the part of the lessee to be bound to make repairs except the covenant that he "will leave the premises in good repair, ordinary wear and tear excepted." Under the statute, section 5180 of the Code of 1919, this covenant did not bind the lessee to repair or rebuild if he was "without fault or negligence."

13. LANDLORD AND TENANT—*Covenant to Leave Premises in Good Repair—Collapse of Building—Section 5180 of the Code of 1919—Negligence of Tenant—Employment by Tenant of Inspectors—Case at Bar.*—The instant case was an action by a landlord on tenant's covenant to leave the premises in good repair. The building had collapsed and the landlord contended that the collapse was due to overloading by the tenant, while the tenant contended that the collapse was due to structural defects in the piers. The tenant had employed two experts to examine the building. Instructions for plaintiff virtually made the mistake of these experts as to the capacity of the building evidence of negligence on the part of the tenant. If the tenant was without fault or negligence in the loading of the building, he was not bound to make repairs, while the instructions imposed liability upon him if the experts made a mistake as to the capacity of the building, however careful the tenant might have been and although he was free from fault or negligence.

    *Held:* That the instructions were highly prejudicial to the defendant.

14. INSTRUCTIONS—*Repetition.*—It is never error to refuse a tendered instruction on a point upon which the jury has already been fully instructed. A jury is said to be sufficiently instructed when the instructions already given cover the points embraced in an offered instruction. It is not error to refuse further instructions when the instructions already given fully and fairly submit the case to the jury on the phases sought to be presented, even though they correctly state the law.

15. LANDLORD AND TENANT—*Covenant to Leave the Premises in Good Repair—Storage Purposes—Instructions.*—The instant case was an action by a landlord on tenant's covenant to leave the premises in good repair. Defendant asked the court for instructions to the effect that if the plaintiff leased the warehouse to the defendant to be used for the storage of tobacco and undertook to repair and put it in condition for such use, and defendant used ordinary care after taking possession to ascertain the strength and capacity of the warehouse, and it was loaded accordingly and collapsed, the jury should find for the defendant.

    *Held:* That the instructions were properly refused in the absence of evidence that the landlord undertook to put the building in condition to use for storage purposes.

16 LANDLORD AND TENANT—*Assignment of Lease—Release of Tenant—Covenant to Repair—Case at Bar.*—The instant case was an action by landlord on tenant's covenant to repair. The lease contained a covenant that the lessee would not assign without leave of lessor. Shortly after the term began, the tenant wrote to the landlord asking permission to assign the lease but said nothing about any release from the covenant to leave the premises in good repair.

The landlord consented to the assignment and thereafter received its rent from the assignee.

*Held:* That tenant was not released from the covenant to repair.

17. LANDLORD AND TENANT—*Assignments—Covenants.*—An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this is true though the assignment is with the consent of the lessor; and although the assignment be by act of law, and the estate be taken from the lessee against his consent, he nevertheless continues liable upon his express covenants.

18. APPEAL AND ERROR—*Error in Instructions where no other Verdict could be Found.*—Where, under proper instructions, no other verdict could have been found than the one found, errors in the instructions are immaterial, and the verdict will not be set aside for such error.

19. APPEAL AND ERROR—*Instructions—Where the Jury could not have been Misled.*—Where it is plain that the jury could not have been misled by an error in an instruction, the verdict will not be set aside for such error.

20. APPEAL AND ERROR—*Error in Instructions—Verdict not Showing that Jury was Misled—Case at Bar.*—In the instant case, an action by a landlord against his tenant on tenant's covenant to repair, the building had collapsed, and there was serious conflict in the evidence as to whether there had been overloading by defendant. The point involved was the negligence of defendant and the burden was on him to show that he was without fault or negligence. It was of the utmost importance, therefore, that the jury should have been instructed on what constituted negligence on the part of the defendant. The instructions contained a statement that defendant was liable for the mistakes of third persons employed by him to inspect the building which had nothing whatever to do with defendant's negligence and was grossly misleading. The verdict for the landlord was a finding that defendant was negligent and was based in part, at least, upon the instructions on that subject, which were highly prejudicial to the defendant.

*Held:* That it could not be said that the jury were not influenced by these instructions nor that from the language of the verdict they were not so influenced.

Error to a judgment of the Corporation Court of the city of Danville in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Meade & Meade* and *Aubrey E. Strode,* for the plaintiff in error.

*Harris, Harvey & Brown,* for the defendant in error.

Burks, J., delivered the opinion of the court.

The following statement of facts is taken from the petition for the writ of error, with slight modifications:

The John E. Hughes Orphanage filed its notice of motion for a judgment against petitioner in November, 1925, for $22,000.00 and alleged the following grounds for its right to recover said sum, to-wit: That on and before October 10, 1925, the petitioner was the tenant of a certain building owned by said orphanage, known as No. 321 Lynn street, Danville, Virginia, under a lease whereby he covenanted to "leave said premises in good repair, ordinary wear and tear excepted;" that on October 10, 1925, said building collapsed as the result of negligently overloading it with tobacco by defendant, and that under said covenant it was entitled to recover said sum in damages for the breach thereof.

Defendant pleaded the general issue and filed his grounds of defense, to-wit: (1) That defendant was not the tenant of said building under said lease, but that W. D. Powell & Company, Incorporated, was the tenant, and defendant was not liable thereunder; (2) that said building was not overloaded, as alleged, or improperly loaded; (3) that said building was partially destroyed, without the fault or negligence of defendant, and that no liability attached to defendant therefor; (4) that the collapse of said building was due to a

latent structural defect in the foundation thereof, of which defendant had no notice and for which he was in no way responsible.

After the evidence was introduced and the jury was instructed by the court, they rendered a verdict against defendant, which the court refused to set aside.

Plaintiff in error charges that during the trial of the action he was greatly prejudiced (1) by the refusal of the court to admit certain pertinent written testimony which was an essential link in the chain of his evidence; (2) by erroneous, misleading and confusing instructions given to the jury by the court at the request of the plaintiff; (3) by the refusal of the court to grant certain instructions requested by defendant, as applied to his theory of the case; and (4) by the refusal of the court to set aside the verdict and grant a new trial.

John E. Hughes, in 1922, purchased the lot known as No. 321 Lynn street, with an old brick factory thereon.   He then employed H. A. Osborne, a builder, to enlarge the factory by extending it back further from Lynn street, and by adding two more stories.

John E. Hughes agreed to lease said lot No. 321, together with other property, to John E. Hughes Company, Incorporated, in which he owned the majority of the stock.   Thereafter, being in bad health, the court appointed a committee to take charge of his estate.   His committee, by authority of the court and in execution of said agreement, demised lot, etc., No. 321, to said John E. Hughes Company, Incorporated, under a written lease, dated April 7, 1921, for five years.   This lease contained a covenant by the lessee, John E. Hughes Company, Incorporated, that it would not assign without leave, and that it would leave the premises in good repair, ordinary wear and tear excepted..   John E. Hughes died in 1922, owning

a majority of the stock of said lessee corporation.   He left a will in which he gave most of his estate for an orphanage, which was created pursuant to his will. The executors of John E. Hughes' will were W. D. Powell (plaintiff in error), First National Bank of Danville, W. C. Thomas, Julian Meade and First National Bank of Richmond.   Plaintiff in error was also a director of the said John E. Hughes Company, Incorporated.

The parties representing the executors of John E. Hughes, John E. Hughes Company, Incorporated, and said orphanage were commonly interested and active in the settlement of John E. Hughes' estate, which involved the winding up of John E. Hughes Company, Incorporated, to which said lot and building, No. 321, had been leased for five years.   In winding up John E. Hughes Company, Incorporated, it was necessary to dispose of the leases of John E. Hughes' property to it. To that end plaintiff in error agreed to take over to himself certain of said leases, including said lease of April 7, 1921, for No. 321 Lynn street, for the purpose of organizing a corporation to assume said leases, when created, and do a storage business in the buildings covered by said leases.   This was understood by all of said parties, including A. B. Carrington, the president of said orphanage.   The lease of said No. 321 Lynn street was under these circumstances assigned over to plaintiff in error on January 23, 1925, by John E. Hughes Company, Incorporated, to take effect July 1, 1925.

The orphanage, equitable owner of lot No. 321, consented to the transfer to W. D. Powell and release of the Hughes Company, and Harris & Harvey, counsel for John E. Hughes Company, Incorporated, and of counsel for the executors of John E. Hughes' will,

wrote the consent to the assignment on the leases, to be signed by the orphanage and mailed them in their letter of March 24, 1925, to W. D. Powell, instructing him to copy the same consent to be signed by the orphanage as to the further assignment by him to W. D. Powell & Company, Incorporated.

In carrying out the instructions of the letters, the said orphanage endorsed on said lease its consent to said assignment and released John E. Hughes Company, Incorporated, from all liability under the lease, and it was the intention of all of said parties that plaintiff in error was to assign said lease to his proposed corporation (W. D. Powell & Company, Incorporated), when it should be chartered, which assignment was to be approved by said orphanage.

In April, 1925, W. D. Powell & Company, Incorporated, was created as had been contemplated, to take over said leases and to do a storage business in the buildings leased.

On July 1, 1925, possession by John E. Hughes Company, Incorporated, ended and W. D. Powell & Company, Incorporated, took possession of the premises No. 321. On July 18, 1925, defendant wrote to the orphanage, stating that the "government" required the leases to be in the name of the *company operating them*, which was W. D. Powell & Company, Incorporated. On July 22, 1925, the orphanage board of trustees authorized the transfer of the leases, including No. 321, from W. D. Powell to W. D. Powell & Company, Incorporated, by a formal resolution.

The assignment was accordingly made, and dated back to June 29, 1925, so that the transfer would take effect prior to taking possession from Hughes & Company. After this transfer, the orphanage made some repairs on the building No. 321, for use by W. D.

Powell & Company, Incorporated. On the 25th of July, 1925, the orphanage wrote to Powell, as president of W. D. Powell & Company, Incorporated, requesting his personal attention to proper care of the factories. To this letter W. D. Powell & Company, Incorporated, through Powell, replied on July 27, 1925, that they had engaged two competent builders to examine the buildings as to their strength and capacity, and that they would be guided by their advice.

On July 1, 1925, the legal title to said lot No. 321 was conveyed to the orphanage by said executors, subject to said lease, pursuant to a written agreement between said executors and the trustees of said orphanage of July, 1924, in which it was agreed that if the estate of John E. Hughes should not be liquidated prior thereto, the executors on July 1, 1925, were to assign and deliver, in kind, to the orphanage all the property of John E. Hughes, including the premises No. 321.

The possession of said property passed from the Hughes Company on July 1, 1925, directly to said W. D. Powell Company, Incorporated.

After July 1, 1925, W. D. Powell & Company, Incorporated, stored tobacco in No. 321, and on October 10, 1925, a section of the building collapsed, causing the damage complained of.

The testimony for the orphanage was intended to show that the W. D. Powell & Company, Incorporated, stored in the building more tobacco than would be a "safe load," according to expert testimony, for the strength of the timbers, and that this was the proximate cause of the collapse. Its purpose was also to show that defendant, as the original lessee of the plaintiff, had not been released and was still liable on the covenants in said lease, to repair and restore said building, notwithstanding the assignment thereof to W. D. Powell & Company, Incorporated.

The testimony of Powell, the defendant, was offered to show that he never was intended to be the actual lessee of the building; that the lease was assigned by John E. Hughes Company, Incorporated, over to petitioner six months prior to the time possession was to be given by the assignor, preparatory to the formation of W. D. Powell & Company, Incorporated, which was to take over the lease, when formed; that W. D. Powell & Company, Incorporated, according to the understanding of all parties, was formed and took over from W. D. Powell the said lease; that the orphanage consented to the assignment and substitution of the W. D. Powell & Company, Incorporated, in place of defendant, and aided in the transfer by writing the assignment on the copy of the lease held by it, with knowledge of the use which was to be made of it; that from the time John E. Hughes Company, Incorporated, surrendered possession of said premises to W. D. Powell & Company, Incorporated, to October 10, 1925, when the building collapsed, said orphanage recognized the transfer to said company, and accepted rent from W. D. Powell & Company, Incorporated.

Powell insisted that the proximate cause of the collapse of the building was two defective foundation piers, formed from a part of an old brick and mortar wall, and that the defects were concealed by a veneering of brick and cement, when the building was enlarged by John E. Hughes; that these two piers from all appearances seemed solid and sound, but in fact were weak and wholly insufficient to sustain the weight which the building would reasonably appear to carry, and that the collapse was due to the giving away of these two piers; that it was a latent defect for which the defendant could not be held liable, even if he had been the tenant of said building.

Powell claimed that he not only exercised ordinary and reasonable care in storing tobacco in plaintiff's building, but that he obtained the expert services of H. A. Osborne and W. K. Anderson, builders and contractors, to make a careful examination of said building, for the purpose of determining whether or not it was safe and proper to use it for the storage of tobacco; that plaintiff knew that it was to be used for the storage of tobacco by a corporation to be formed by petitioner, before it consented to its use for the storage of tobacco; that plaintiff employed the said H. A. Osborne to repair said building for use by W. D. Powell & Company, Incorporated, as a storage warehouse; that said Osborne and Anderson, after a careful examination of said building, reported to defendant that he could load it in the manner and to the extent which was done; that plaintiff knew that Powell was consulting these two experts as to the capacity of said building, and that he, as the president of said W. D. Powell & Company, Incorporated, would rely upon their advice; that plaintiff made no objection to this means of determining the capacity of said building; and that the collapse was not due to any fault or negligence of defendant.

The theory on which the orphanage based its right to recover was: (1) That defendant had not been legally released from the covenant in the lease; that more than a safe load was placed in the building, and that this was the proximate cause of the collapse.

The theory of the defense was: (1) That defendant was not the lessee of the building, but that W. D. Powell & Company, Incorporated, was the real lessee in the contemplation of the parties, and the original lease had been formally assigned to it with the intention of relieving petitioner from liability; (2) that the

collapse of plaintiff's building was due to latent defects in the foundation thereof, of which neither the defendant nor W. D. Powell & Company, Incorporated, had notice, and which they could not have discovered by the exercise of reasonable care, and for which they are not responsible; (3) that the collapse of the building was not due to any fault or negligence of defendant.

[1] The first assignment of error is to the action of the trial court in refusing to admit in evidence the letter of Harris & Harvey, hereinbefore referred to. Harris & Harvey were not counsel for the orphanage but for the John E. Hughes Company, and the letter was written by them as attorneys for that company to Powell as an officer of that company, and enclosed leases on different buildings from the one in controversy. On account of the relation of the different lessees to the Hughes Company, it explained that some of them should be executed by the president of the Hughes Company and others by Powell as vice president. In referring to the property leased by Powell, it said: "If you want to assign them to your new company, all it will be necessary for you to do will be to execute a similar form of assignment as that executed by the John E. Hughes orphanage." This is the only reference to the property leased by Powell. Not a word is said about any release from his covenants. The orphanage was in no way a party to the correspondence nor affected by it. While there are other reasons pointed out by counsel for the defendant in error, in their brief, why the letter should have been excluded, it is sufficient to say that it was properly excluded as *res inter alios acta*. But even if it was error to exclude it, it was harmless, as it contained nothing that showed that Powell was ever released from his covenant to repair.

· In speaking of the admissibility of this letter, the judge of the trial court said: "It is inconceivable to me that there is any principle of law under which this letter could be admitted in evidence, so as to bind the plaintiff in this suit, and even if the letter was admitted it does not show that Powell was ever released from any liability incurred under the lease, but merely tells him what procedure is necessary to secure his release, and it does not appear from the evidence in this case that any effort was ever made by Powell to secure a release, or that the plaintiff would have released him even though he had asked for a release. The court has attempted to pass on the legal effect of the lease as it was, and not what it might have been if release had been asked for and granted. In the opinion of the court it would clearly have been error to have admitted this letter in evidence."

The other assignments of error deal with the ruling of the trial court on instructions, and its refusal to set aside the verdict for errors in the instructions.

The instructions given and refused are copied in the margin.*

---

*Plaintiff's Instructions Given.*

No. 1. The court instructs the jury that it is the duty of the court to construe the writings shown in evidence in this case and to instruct the jury as to their legal effect, and the court tells the jury that W. D. Powell, the defendant in this case, was not released from the agreement made by him in the lease dated April 7, 1921, but is still bound by the covenants therein.

2d. That the covenant in said lease reading "will leave the premises in good repair, ordinary wear and tear excepted," in said lease was agreed to by Powell, the defendant, and became fully binding on him, and the assignment and transfer of said lease by Powell to a corporation formed by him with the assent of the orphanage did not release him from his agreement, but he is still bound by said agreement in accord with its legal effect.

3d. Upon the collapse of said building the above covenant requires Powell to restore said building to the condition at the date of the lease, ordinary wear and tear excepted, unless Powell can show that the collapse of said building was not caused by any fault or negligence on his part, or on the part of W. D. Powell & Company, Incorporated. The law does not require the owner to show the cause of the fall of the building or to show

[2] The bills of exception which contain the instructions do not state the objections to the instructions given, and it is argued that such objections cannot be considered by this court under its Rule 22. The judge of the trial court, however, delivered a written opinion when he overruled the defendant's motion for a new trial, in which he states that instructions 2, 3, 5, 7 and 8, given for the plaintiff, were objected to by the defendant, and the grounds of the objection. The objection to instruction 4 for the plaintiff is shown by the request of the defendant for instruction III, which propounded the contrary theory, and which was refused; and the objection to plaintiff's instructions 1

that it was the fault of Powell, but requires that Powell, to avoid complying with the covenant made by him in the lease, must show by the preponderance of the evidence that the building fell through no negligence or fault of his.

4th. Unless the jury are satisfied by the greater weight of the evidence that the building fell through no fault or negligence of Powell or W. D. Powell & Company, Incorporated, then they must under the law find a verdict for the plaintiff.

No. 2. The court instructs the jury that negligence is the lack of ordinary care under the circumstances. If the jury believe from the evidence that Powell, or his company, caused or allowed tobacco in such quantity or in such a way to be stored in this building when ordinary care would have warned him that said building was being overloaded, and as a result thereof the building collapsed, then Powell, or his company, was guilty of negligence and this is true whether the first break came in the floor above or the pier beneath.

No. 3. The court instructs the jury that they should inquire if the building was overloaded by Powell, or those under him; that is, if more tobacco was placed therein than the building by reason of its construction could reasonably be expected to hold, and if such overloading, if any, caused the fall of the building.

If the jury believe from the evidence that the building was so overloaded by Powell, or those under him, and thereby caused to fall, and this was done through fault or negligence, then regardless of whether the building first broke on the floor above or the pier underneath, they must find for the plaintiff. Or if after hearing all of the evidence the jury are unable to say whether the building fell because it was overloaded through fault of Powell or from some other cause, or causes, for which he was not responsible, then as the burden of proof is on Powell to show that the building fell through no fault or negligence of his, the jury must find for the plaintiff.

No. 4. The court instructs the jury that plaintiff, as grantee of the premises, is entitled to the benefit of the covenants in the written lease introduced in evidence and that the defendant Powell is bound by the terms of said lease, although same may have been assigned by him to W. D.

and 4 clearly appear from other portions of the record. None of the objections to the instructions for the plaintiff, except 6 and 9, therefore, are within Rule 22 as construed in *Levine* v. *Levine*, 144 Va. 330, 132 S. E. 320.

[3] Instructions 1 and 4, given for the plaintiff in the trial court, are discussed together by counsel for the defendant, Powell. The chief objection raised to these instructions is that they took away from the jury the consideration of all evidence tending to show that the parties "originally intended" that W. D. Powell & Company, Incorporated, was to be completely substituted for W. D. Powell in the lease to the latter,

Powell & Company, Incorporated, with the consent of the plaintiff and said plaintiff may have accepted rent from W. D. Powell & Company, Incorporated, since such assignment.

No. 5. The court instructs you that under the lease in this case, the landlord did not owe to the defendant the duty of actively exerting ordinary care at the time of the leasing, or consent to the transfer, to discover and apprise the tenant of hidden defects in the premises, if any there were. In the absence of actual knowledge on the part of the plaintiff of a defective condition of the premises. the tenant takes the risk of the premises as they are. The fact that plaintiff knew for what purposes the premises were to be used does not change this rule.

No. 6. The court instructs the jury that they must, under the terms of the lease, find for the plaintiff unless they believe that the defendant has proven by the greater weight of the evidence that the collapse of the building was not caused by the fault or negligence of the defendant or his assignee, W. D. Powell & Company, Incorporated.

The jury are instructed that in considering any defense offered in this case for the purpose of showing that the house collapsed without fault or negligence on the part of the defendant, or his assignee, the W. D. Powell Company, the burden is on the defendant to prove such defense by the greater weight of the evidence.

No. 7. The court instructs the jury that the defendant, W. D. Powell, was in duty bound to the plaintiff to exercise reasonable care in his use of plaintiff's building, to the end that it would not be damaged by such use as he made of it. He could not relieve himself of this duty, nor transfer it to any other person.

Even if the defendant sought advice in good faith, from competent builders, as to the carrying capacity of said building, and they advised him that it was safe to carry the load which was placed therein, yet the defendant, if in fact such advice was had, cannot rely thereupon to defeat plaintiff's right to recover. The mistake, if any, of those persons so advising him, is, in contemplation of the law, the mistake of Powell, and he is responsible for the legal consequences thereof, if any arose.

No. 8. The court instructs the jury that the defendant, W. D. Powell, cannot rely upon the advice of W. King Anderson and H. A. Osborne as to

and that he should be released from his covenant in the lease to leave the property in good repair. The objection is not sound. It is wholly immaterial what the parties "originally intended." When they entered into the contract of lease, all prior negotiations on the subject covered by the contract, oral or written, all prior understandings, intentions and agreements became merged in the contract, and the contract became the sole memorial of the agreement of the parties. The law conclusively presumes this and will hear nothing to the contrary. *Rector* v. *Hancock*, 127 Va. 101, 108, 102 S. E. 663; *Whitaker* v. *Lane*, 128 Va. 317, 346, 104 S. E. 252, 11 A. L. R. 1157.

the carrying capacity of the building in question.. If they were mistaken in the opinion given by them to the defendant, then this mistake is, in contemplation of the law, the mistake of defendant, insofar as the consequences bear upon the issue of this case.

No. 9. The court instructs the jury that if their verdict is for the plaintiff they should fix its damage at the cost of replacing upon the lot the part of the building destroyed of equal size, character and construction, deducting therefrom a proper and just amount for the age and depreciation of the part of the building destroyed—less the amount which the plaintiff has received or should receive by the use or sale of the material salvaged less the cost of producing such salvage.

*Defendant's Instructions Given.*

I. If the jury believe from a preponderance of the evidence that the fall of a part of the tobacco warehouse building in evidence was not caused by any fault or negligence of the defendant or of his assignee, the W. D. Powell Company, they must find for the defendant.

II. If the jury believe from a preponderance of the evidence that the fall of a part of the tobacco warehouse building in evidence was due to defective foundation pillars and that such defects in the pillars were not known to the defendant, and could not in the exercise of ordinary care be ascertained by him, they should find for the defendant.

IV. The measure and extent of the duty of the defendant in respect of the care and maintenance of the leased premises was to use reasonable care such as a man of ordinary prudence would exercise in and about the same and he would be liable to the plaintiff in this action only for negligent conduct on his part in and about the use of the leased premises, and therefore if the jury believe from the evidence that the damages suffered by the plaintiff were not caused by the negligent conduct of the defendant, they should find for the defendant.

V. In determining whether or not the collapsed building in evidence was negligently overloaded or improperly loaded, the jury should take into consideration the usual practice in common use in this community in such matter, and the apparent strength and soundness of the building and of its parts as they appeared to the defendant and if the jury believe from the evidence that the loading of the building was done in the ordinary way in

Instructions 1 and 4, given for the plaintiff (orphanage), correctly state the law, and it was not error to give them.

[4] The objection to instruction 2, given for the plaintiff (orphanage), is that it is misleading and confusing, and charges the defendant with negligence on a partial statement of the case. The theory of the plaintiff was that the collapse was caused by the giving away of the timbers in the three top floors which were overloaded, while the theory of the defendant was that the collapse was caused by the breaking down of the piers in the basement which supported the columns on all of the floors; that there was a structural defect in these piers

general use in this community, and that no more hogsheads of tobacco were placed in the building than a reasonable man of ordinary prudence might think it would fairly hold and sustain, but that because of defects in the building or in the foundations or parts thereof unknown to the defendant, or which could not be ascertained by the exercise of ordinary care, the building when so loaded collapsed they should find for the defendant.

IX.   There is no burden upon the defendant to satisfy the jury by the evidence beyond a reasonable doubt that the fall of the warehouse was not due to his fault. It is sufficient to warrant a verdict in favor of the defendant, if the jury believe from a preponderance of the evidence that the fall of the warehouse was due to some cause for which the defendant was not responsible.

XIV.   The court instructs the jury that the covenant in the lease under which the defendant holds the building involved, made by John E. Hughes & Company, "that it will leave the premises in good repair, ordinary wear and tear excepted," is not a covenant to reconstruct the building, or the part thereof destroyed, if the destruction was not due to any fault or negligence of the defendant.

#### *Defendant's Instructions Refused.*

III.   Although the jury may believe from the evidence that the defendant executed the lease in evidence with the plaintiff yet if the jury further believe from the evidence that thereafter the defendant with the acquiescence of the plaintiff assigned the said lease to the W. D. Powell Company, a corporation, from which the plaintiff accepted the rent payments from time to time under the said lease thereby releasing the defendant from the covenants thereof the jury should find for the defendant.

VI.   If the jury believe from the evidence that the collapse of the warehouse building in evidence was more probably due to defective foundation piers than to the failure of joists or other timbers in the building, and that the building was not loaded beyond the sustaining capacity of the said piers, if they had been as they appeared to be and as the defendant reasonably believed them to be, then the jury should find for the defendant.

X.   If the jury believe from the evidence that the plaintiff leased the warehouse to the defendant to be used for the storage of tobacco, and under-

which was not discoverable by the defendant, and for which he was not responsible, and that if the piers had the strength which they appeared to have there was no overloading, and there would have been no collapse. There was abundant evidence to support either theory, and, in the absence of any instruction on the subject, a verdict in favor of either party could not have been set aside for the lack of evidence. The instruction deals with the subject of "overloading," but makes no reference to what would constitute an overload under the circumstances of the case. Evidence for the defendant tended to show that if the piers had been what they appeared to be, there was no overloading of

took to repair and put it in condition for such use, that thereafter the defendant taking possession of it under such lease used such care and judgment as a man of ordinary prudence would use in and about affairs of like kind of his own in ascertaining the strength and capacity of the warehouse, and had it loaded accordingly, whereupon a part of it fell, under such circumstances as that the jury are unable to determine from the evidence whether the collapse was due to defective foundation piers, unknown to the defendant, or to the giving way of the timbers of the building, the jury should find for the defendant.

XI.    If the jury believe from the evidence that the plaintiff leased the warehouse to the defendant for tobacco storage purposes, and undertook to repair and put it in condition for such use, that the defendant, using ordinary care, acted upon the advice of two competent contractors, one of whom had constructed a large part of the building, and had repaired it for the plaintiff, had the building loaded as they advised might be safely done, and the building fell, the jury should find for the defendant.

XII.    If the jury believe from the evidence that the plaintiff leased the warehouse to the defendant for tobacco storage purposes, and undertook to repair and put it in condition for such use, that the defendant relied upon the advice of two competent contractors as to how the building should be loaded, that the defendant followed out the instructions of said contractors in loading said building, the defendant used such care and judgment as a man of ordinary prudence would use in and about affairs of like kind of his own in making use of said building as a storage warehouse, and the building fell, they must find for the defendant.

XIII.    The court instructs the jury, that if they believe from the evidence in this case that at the time the lease in question was assigned by W. D. Powell to W. D. Powell & Company, Incorporated, it was understood and agreed between the parties to said lease that the effect of such assignment should be to release the said W. D. Powell as the original lessor and to substitute the said corporation of W. D. Powell & Company, Incorporated, in his place, then the said W. D. Powell is not liable to plaintiff under the covenants in said lease.

XV.    The court instructs the jury that the covenant in the lease, "that

the piers. The omission of all reference to this feature of the case, it is claimed, made the language of the instruction misleading. The instruction did not direct a verdict for the plaintiff, but was intended to present the plaintiff's theory as to what constituted actionable negligence on the part of the defendant. So far as it affected the amount of the load, it told the jury that if Powell or his company put such a load on the building as ordinary care on his part would have warned him that the building was being overloaded, and as a result thereof the building collapsed, then Powell was guilty of negligence whether the first break came in the floor above or the pier beneath, and this was true. If Powell or his company in fact overloaded the building, and in consequence thereof the building collapsed, then he was guilty of negligence. But if the loading did not exceed the apparent capacity of the piers, it could not be said that the piers were overloaded, and it

he will leave said premises in good repair, ordinary wear and tear excepted," contemplates and covers only ordinary repair to the building, except the ordinary wear and tear thereon, and does not cover rebuilding, or replacement, of the building, in whole or any part thereof, that might become necessary by reason of defects in the construction of the building. Therefore, if you believe from the evidence that the collapse of the building was due to defective construction, without fault or negligence on the part of Powell, and not the ordinary wear and tear thereon, then you must find for the defendant.

VII. Even though the jury may believe from the evidence that the warehouse in issue may have been loaded beyond the generally used standards of safety for such timbers as were contained therein, nevertheless, if the jury further believe from the evidence that the fall thereof was not due to such overloading of any of the said timbers, but was caused by the collapse of defective or weak foundation piers, the true condition of which was not known to the defendant, and that the building was not loaded beyond the strength of the said piers if they had been such as the defendant reasonably believed them to be, the jury should find for the defendant.

VIII. If the jury believe from the evidence that the fall of the said warehouse was due to the giving way of foundation piers, and if the jury further believe from the evidence that the said warehouse was not loaded beyond the capacity of the said piers to bear, if these piers had been the quality and make-up that they reasonably appeared to be to those not acquainted with their true construction and condition, the jury must find for the defendant.

would probably have been well to have said so, but the
plaintiff was simply stating its side of the case, and the
defendant was amply protected and his theory of the
case fully presented by instructions II and V, given at
his instance. Instructions 2 and 3, for the plaintiff,
and II and V, for the defendant, presented the two
opposing theories of the case, and when read together,
as they should be, the jury could not have been in
doubt or uncertainty, as to the issue presented to them
for decision. As was well said by the judge of the
trial court: "The objection to Instructions 2 and 3
was addressed principally to that part of the instruc-
tions which directed the jury that if through the
negligence of Powell the building was so overloaded
with tobacco as to fall, then Powell was liable whether
the first break came in the floors above or in the
piers beneath. These instructions were given on the
theory of the plaintiff that both the flooring and the
piers were reasonably safe for a safe load, and there
was evidence in the case to sustain this view, and if
the timbers in the floors and the materials in the
piers was of reasonably good material, and Powell by
negligent overloading of the building caused either the
floors or piers to give way, then he was unquestionably
liable for any damages done thereby.

"It is contended by learned counsel for the defendant
that the jury may have been misled by this instruction,
although they were instructed in Instruction No. II,
given at the request of the defendant, as follows: 'If
the jury believe from a preponderance of the evidence
that the fall of a part of the tobacco warehouse building
in evidence was due to defective foundation pillars, and
that such defects in the pillars were not known to the
defendant, and could not, in the exercise of ordinary
care, be ascertained by him, they should find for the

defendant.' As the court sees it, the instructions 2 and 3, given at the request of the plaintiff, on their view, amply supported by the evidence that the materials in both the flooring and the piers were good and the damages were incurred by the negligent overloading of either, then the defendant would be liable therefor, and the jury were carefully instructed in No. II for defendant if there was any latent defect in the piers the defendant was not liable."

The plaintiff claimed that the house was overloaded, thereby causing its collapse, and, if it was overloaded in fact, it was immaterial whether the first break came in the floor above, or in the piers beneath. On the other hand, the defendant claimed that there was no overloading, and that in determining that question the jury should consider the apparent strength and soundness of the building, and the manner of loading, and if of opinion that the building was loaded according to local custom, and that the collapse of the building, so loaded, was due to undiscoverable structural defects in the foundation of the building, they should find for the defendant. These instructions presented to the jury the question whether, under all the circumstances, including the defects in the piers, the building was in fact overloaded or not.

[5] What has been said about instruction 2 applies also to instruction 3, except the last sentence of the latter. This sentence deals with the subject of the burden of proof and correctly states the law. *Richmond Ice Co.* v. *Crystal Ice Co.*, 103 Va. 465, 49 S. E. 650.

The giving of instructions 2 and 3 in conjunction with II and V was not error.

[6] The building which collapsed was five stories high, and was erected for the purpose of manufacturing tobacco, and, as was usual at that time in such cases, the

upper stories were chiefly used for hanging leaf tobacco to bring it in order for handling, and not constructed of as heavy material as the lower stories.   In the top story the joists were two by ten inches, and not of the best material.   The next story was somewhat stronger, and the third from the top was still stronger.   These joists and floors were open and in plain view, and when Powell rented the building for storage purposes he knew that it had never before been used for a storage warehouse.   With a view to meet the suggestion that the plaintiff knew that Powell intended to use the building for storage purposes, and to negative the idea that the plaintiff thereby represented the building to be fit for that purpose, the plaintiff asked, and the court gave, instruction 5.   Of this instruction the trial judge says: "Now as to Instruction No. 5 given at the instance of the plaintiff: It is admitted by counsel that it is a correct statement of the law, but he claims it is not applicable in this case.   The instruction was approved by the Supreme Court in the case of *Vaughan* v. *Mayo Mill Co.*, 127 Va. 148, 102 S. E. 597, as setting forth the duties of the owner of the building, and in my opinion fixes the liability of the owner in this case as well, whether the tenant was claiming offsets or not."

[7] In 16 R. C. L., pages 772, 775, sections 268 and 270, it is said:   (268) "The general doctrine of the law is that on the demise of a house or lands there is no covenant or warranty implied that the premises shall be fit and suitable for the use for which the lessee requires them, whether for habitation, occupation, or cultivation, and consequently their unfitness for such purpose will not as a general rule justify the tenant in abandoning the premises, and on such grounds making defense to an action for rent.   The tenant hires at his

12

peril, and a rule similar to that of *caveat emptor* applies and throws upon the lessee the responsibility of examining as to the existence of defects in the premises and providing against their ill effects.   *   *.

[8] (270) "In the absence of warranty, deceit or fraud on the part of a landlord, the rule of *caveat emptor* applies to leases of real estate, the control of which passes to the tenant, and it is the duty of the tenant to make examination of the demised premises to determine their safety and adaptability to the purposes for which they are hired."

The trial court did not err in granting instruction 5.

[9] Instruction 6, given for the plaintiff, is on the subject of the burden of proof.  The ground of objection to this instruction nowhere appears in the record, and hence cannot be considered under Rule 22. But even if it could be, the instruction correctly states the law.   *Richmond Ice Co.* v. *Crystal Ice Co.*, 103 Va. 465, 49 S. E. 650; *Vaughan* v. *Mayo Milling Co.*, 127 Va. 148, 154, 102 S. E. 597.

[10, 11] The first sentence of instruction 7 correctly stated the law and is unobjectionable, but the residue of No. 7 and the whole of No. 8 were grossly misleading. The covenant to leave the premises in good repair, unaffected by statute, was not a covenant to use due care to leave them in good repair, but an absolute covenant to do a specific thing, to-wit, to leave the premises in good repair. This imposed upon the defendant a nonassignable duty from which he could not relieve himself by the employment of an independent contractor, or otherwise. This was the common-law rule, and apparently the duty sought to be imposed by the objectionable instructions. But the common law rule has been radically changed by section 5180 of the Code, and the liability of the tenant

made dependent upon whether or not there was "fault or negligence on the part of the lessee." "Fault," as used in the statute, means the "omission" of some duty which the tenant ought to perform, and is practically synonymous with *negligence*. So that the liability of the tenant, under the statute, becomes a question of negligence. The statute determines the interpretation of a covenant to leave the premises in good repair.

The hardship of the common law rule, the ineffectual efforts of the revisors in 1849 to change it, the changes made by the revisors in 1887 and the reasons therefor have been often discussed, and the discussion need not be repeated. See Address of Judge Burks, 4 Va. State Bar Asso. 119; *Richmond Ice Co.* v. *Crystal Ice Co.*, 103 Va. 465, 47 S. E. 650; *Vaughan* v. *Mayo Milling Co.*, 127 Va. 148, 102 S. E. 597; 7 Va. Law Reg. 159. For changes made by revisors of 1919, see revisors' note to section 5180.

Omitting the portions of section 5180 of the Code which are inapplicable to the facts of the instant case, the residue of the section is in substance as follows: No covenant to leave the premises in good repair shall have the effect of binding the lessee to make such repairs or erect such buildings again, if the buildings be destroyed by fire or otherwise, in whole or in part, without fault or negligence on the part of the lessee, unless there be other words showing it to be the intent of the parties that he should be so bound.

[12] It is not claimed, and could not be, that there are any "other words" in the lease showing an intent on the part of the lessee to be bound to make repairs except the covenant that he "will leave the premises in good repair, ordinary wear and tear excepted." The statute says that this covenant did not bind the lessee

to repair or rebuild if he was "without fault or negligence."

[13] In the brief of counsel for defendant in error (Orphanage) it is said: "The employment of the contractors to inspect the building was a circumstance to be considered by the jury in determining whether Powell used due and reasonable care in loading the building in the manner and to the extent to which he did, but such employment could not absolve him from the consequences of their bad judgment in estimating its capacity or of his negligence in overloading the building."

The question involved was not whether Powell could unload a nonassignable duty on Anderson and Osborne, but whether or not Powell was guilty of negligence, and the object of showing inspection and advice by Anderson and Osborne was to show that Powell acted in good faith, and endeavored to be careful in the manner and to the extent of loading the building. If he was "without fault or negligence" in this respect, he was not bound to make the repairs, while the instructions impose a liability upon him if Anderson and Osborne made a mistake as to the capacity of the building, however careful Powell may have been, and although he was free from "fault or negligence." No question of mistake was involved. The first sentence of the plaintiff's instruction 7 correctly told the jury that Powell "was in duty bound to the plaintiff to exercise reasonable care in his use of the plaintiff's building, to the end that it would not be damaged by such use as he made of it." This was his whole duty, and the instruction should have ended there. This duty of using ordinary care he could not transfer to another. But if he showed that he had used such care and hence was "without fault or negligence," he was entitled to a

verdict in his favor.   Whether or not Anderson and Osborne had made a mistake was wholly immaterial. If Powell acted in good faith in employing them to inspect the building and ascertain its carrying capacity, and if they were competent to do this, and acted in good faith in giving the service, this was not the transfer of a nonassignable duty to them, and the mere fact that they were mistaken in their judgment did not impose liability on the defendant.   The employment of Anderson and Osborne was not for the purpose of avoiding any liability resting upon the defendant, but of aiding him in the fulfilment of his contract and of enabling him to use the building so as to be "without fault or negligence" in such use.   Plaintiff's instructions 7 and 8 present a contrary view, and were misleading and erroneous.   They, in effect, make the mistake of Anderson and Osborne evidence of negligence on the part of the defendant.   The duty of the defendant to "exercise reasonable care in his use of the plaintiff's building" was not transferable, the employment of Anderson and Osborne for the purpose aforesaid was not an effort to transfer it, and their mistake, if any, in estimating the carrying capacity of the building was no evidence of the lack of "reasonable care" on the part of the defendant.   Instructions 7 and 8 for the plaintiff were highly prejudicial to the defendant.

[14] Instructions VII, VIII and XV, tendered by the defendant and refused are adequately covered by instructions II and V given for him, and the court committed no error in the refusal, though it would have been better to have substituted VII for II, as it is much fuller.   It is never error to refuse a tendered instruction on a point upon which the jury has already been fully instructed.

In Burks' Pl. & Pr. (2d ed.), section 260, citing many

cases from this court, it is said: "A jury is said to be sufficiently instructed when the instructions already given cover the points embraced in an offered instruction. It is not error to refuse further instructions when the instructions already given fully and fairly submit the case to the jury on the phases sought to be presented, even though they correctly state the law." See also *Sutherland* v. *Wampler*, 119 Va. 800, 802, 89 S. E. 875.

The trial court committed no error in refusing defendant's instructions VI and X. They were on the subject of the burden of proof, and did not correctly state the law. As hereinbefore stated, the law on this subject was correctly stated in plaintiff's instruction 6.

[15] Defendant's instructions XI and XII were properly refused because there was no evidence that the plaintiff undertook to put the building in condition to be used for storage purposes.

Instruction XIII tendered by the defendant was properly refused for reasons hereinbefore stated in the discussion of plaintiff's instructions 1 and 4. All prior understandings and agreements about the lease were merged in the written lease.

[16] Defendant's instruction III did not state the law correctly and was, therefore, properly refused. By this instruction, the defendant sought to have the jury told that if the plaintiff assented to the assignments of the lease by the defendant to the W. D. Powell Tobacco Company, and the latter paid the rent to the plaintiff, this was a release of the defendant from his covenant to leave the premises in good repair.

The written lease contained a covenant that the lessee would not assign, without leave of the lessor. Shortly after the term began, Powell wrote to the plaintiff stating that the "government" required the

operators of storage warehouses to have leases in their own names, and asking permission to assign the lease to the W. D. Powell Tobacco Company, saying nothing about any release from his covenant to leave the premises in good repair, and the plaintiff consented to the assignment, and thereafter the W. D. Powell Tobacco Company paid the rent. The trial court rightly held that this was no release from the covenant to repair. The plaintiff had ample security for its rent, and it was a matter of indifference to it who paid it, and it gave no intimation of any intention to release Powell from his express covenant, nor was that asked. The mere fact of accepting the rent from the W. D. Powell Tobacco Company did not operate to release Powell from his covenent to repair.

[17] In 16 R. C. L., page 843, section 343, it is said: "An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this is true though the assignment is with the consent of the lessor; and although the assignment be by act of law, and the estate be taken from the lessee against his consent, he nevertheless continues liable upon his express covenants. The reason for the continued liability of the lessee is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment, although made with the assent of the lessor, and the lessee still continues liable on his covenant by virtue of the privity of contract. Thus the lessee is liable after assignment upon his covenant to pay taxes, and *upon his express covenant to repair.*" · (Italics supplied.)

See also, 16 R. C. L., page 846, section 846; Tiffany on Real Property, section 46; Minor on Real Property,

section 423; *Kanawha, etc., Co.* v. *Sharp,* 73 W. Va. 427, 80 S. E. 781, 52 L. R. A. (N. S.) 968, Ann. Cas. 1916E, 786.

This brings us to a consideration of the verdict, which was in the following words and figures, to-wit:

"*Danville, Virginia, January 1, 1926.*
"TRUSTEES OF THE HUGHES ORPHANAGE
"v.
"W. D. POWELL.

"We, the jury, find that from the evidence submitted, that the three top floors of building in question was overloaded according to the custom existing in the storage of tobacco in such buildings, in the city of Danville, thereby causing its collapse. Therefore, we decide in favor of the plaintiff in the sum of $18,000.00, salvage to be property of plaintiff."

What does this verdict mean, and does it cure the error pointed out in the plaintiff's instructions 7 and 8?

[18-20] We have held too often to justify the citation of all the cases, that where, under proper instructions, no other verdict could have been found than the one found, errors in the instructions are immaterial, and the verdict will not be set aside for such error. It has also frequently been held that where it is plain that the jury could not have been misled by an error in an instruction, the verdict will not be set aside for such error. *N. Y., etc., R. Co.* v. *Bundick,* 138 Va. 547, 122 S. E. 261, and cases cited; Burks' Pl. & Pr. (2d ed.), page 495, section 257, and Phillips on Instructions, section 106, citing many cases. But the instant case is not within either of these classes. If the verdict here had been simply, "We, the jury, find for the plaintiff and assess his damages at $18,000.00," we should have felt compelled to set it aside for the error aforesaid in the instructions. But the position here taken is that,

although the jury *might have been* misled, the language of the verdict shows that they *were not.* The verdict shows that the cause of the collapse was the overloading of the three top floors of the building, but whether this caused the timbers to break or the weak piers to give way does not appear. The evidence shows that either might have happened, and which of the two was the more probable was the subject of the most serious conflict in the evidence. There was also the most serious conflict on the question whether or not, under the evidence, there was any overloading. The point involved was the negligence of the defendant, with the burden on him to show that he was "without fault or negligence." It was of the utmost importance, therefore, that the jury should have been correctly instructed on what constituted negligence on the part of the defendant. Instructions 7 and 8 for the plaintiff, and especially 7, dealt with the care required of the defendant, and what would constitute negligence on his part. Instruction 7 told the jury that Powell "was in duty bound to the plaintiff to exercise reasonable care in his use of plaintiff's building," but that is immediately followed in that instruction and instruction 8 by a statement of the defendant's liability for the mistakes of third persons, which had nothing to do with the defendant's negligence, and, as has been pointed out, was grossly misleading. The verdict for the plaintiff was a finding that the defendant was negligent, and was based, in part at least, upon the instructions on that subject which were highly prejudicial to the defendant. It cannot be said that the jury were not influenced by these instructions. Certainly, it cannot be said from the mere language of the verdict that they were not so influenced. It would set a dangerous precedent to uphold a verdict in a case where error has

been committed in instructions to the prejudice of the losing party. It can only be done, if at all, where it is plain that the error could not have affected the result, or if it could, it plainly appears on the face of the verdict, without outside aid, that it did not in fact affect the result. The verdict in the instant case does not measure up to this standard.

For the error aforesaid in instructions 7 and 8, given for the plaintiff in the trial court, the verdict of the jury will be set aside, the judgment of the trial court reversed, and the case remanded for a new trial in conformity with the views hereinbefore expressed.

*Reversed.*