## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Katherine Moses

v.

Donald Cooper and
Norman West

June 28, 1967

Case No. A-9023

By JUDGE ALEX H. SANDS, JR.

This is an action for waste instituted by Katherine Moses, owner of premises located at 2026 East Main Street, Richmond, against Norman West and Donald Cooper as tenants.

The motion for judgment alleges that by a lease dated April 26, 1951, plaintiff leased the premises to West for a term of ten years, commencing August 1, 1951. On June 1, 1955, pursuant to authority conferred under the terms of the lease, West assigned the lease to Hollywood Clothiers, Incorporated. On September 8, 1955, plaintiff and Hollywood executed an agreement extending the term of the original lease for an additional period of five years and granting to Hollywood an option for renewal at the end of this time. During the year 1959, Hollywood ceased business and on June 1, 1961, its charter was revoked by the S.C.C. Cooper, who had been secretary of Hollywood and who, in such capacity, had executed the September 8, 1955, agreement between plaintiff and Hollywood, continued the payments in his individual name. The motion concludes with the allegation that West and

Cooper as tenants committed the waste which is the subject of this action.

In addition to grounds of defense West has filed a motion for summary judgment and Cooper has filed what he terms a "request for ruling" which will be considered as a demurrer. These will be considered in the order named.

West moves for summary judgment upon the ground that the pleadings, on their face, show that the instrument executed by plaintiff and Hollywood on September 8, 1955, constituted a new lease which, by operation of law, terminated the original lease and released West from any further liability growing out of the leasehold. This motion raises the question "does the assignment of a lease by a tenant to another, and with the lessor's consent, release the tenant from further liability under the lease?"

It is well established in Virginia that the mere assignment of a lease by the lessee does not absolve the lessee of his responsibility for compliance with all covenants therein and this is true regardless of whether or not the lessor accepts the assignee as tenant. *Farmers Bank v. Mutual Ass'n. Society*, 31 Va. (4 Leigh) 69 (1832); *Taylor's Landlord and Tenant* (9th ed.), vol. 2, page 16, sec. 438.

Nor does such an assignment and the acceptance thereof by the lessor constitute a novation, and upon default the lessor can sue either tenant, assignee or both. 11 Mich. Jur., *Landlord and Tenant*, p. 736, sec. 58; *Kanawha-Gauley Coal, etc. & Co., etc. v. Sharp*, 73 W.Va. 427.

These rules are, of course, predicated upon the concept that the privity between landlord and tenant is twofold, that of contract and that of estate and that while privity of estate ceases upon entry by the assignee, privity of contract upon the covenants, as between landlord and tenant, continues until termination of the period of the lease. *Powell v. Orphanage*, 148 Va. 331 (1927).

But are we dealing with the original lease at all? The term of the original lease was from August 1, 1951, to July 31, 1961, and was at a rental of $100.00 per month. The agreement entered into between lessor and Hollywood on September 8, 1955, not only extended the terminal date to July 31, 1966, but gave Hollywood an

option of renewal which was not in the original lease. Such agreement constituted a new lease. *Cooke v. Wise*, 13 Va. (3 Hen. & M.) 463 (1809); *Preston v. McCall*, 48 Va. (7 Gratt.) 121 (1850); 2 *Taylor's Landlord and Tenant*, sec. 507, p. 102. The original term was surrendered thereby and a new lease between plaintiff and Hollywood to terminate July 31, 1966, came into existence. This effected, as to West, a surrender of the original lease by operation of law. See 2 *Taylor's Landlord and Tenant*, pages 101-109, secs. 507 through 512, inclusive. The fact that this so-called "extension" (which was necessarily a new lease) was done with West's knowledge makes no difference for there is no allegation that West ever became a party to the lease which was controlled by the July 31, 1966, terminal date.

We have in the case at bar the identical situation dealt with in *Cooke v. Wise*, 3 Hen. & M. 463, except that in *Wise* the Court was dealing with a *sublease* rather than an assignment. In *Wise*, the owner, Wise, leased to Cooke for a term of five years. Cooke then (verbally) demised the premises to McRae & Co. for the balance of the five-year term. McRae then agreed to let Wise rent to anyone he chose for the balance of the five-year period, all of this being under the *original lease*. Wise then rented to Groverman *for a period beyond the five year terminal date*. Upon a breach of the covenant to pay rent, Wise sued Cooke for rent in arrears up to the terminal date under the original lease. The Court permitted recovery, but upon the ground that the transaction between Cooke and McRae Co., being *verbal* was *not* an assignment but only a *sublease* under Cooke and as an under-lessee *cannot* surrender to a landlord the tenant's lease (2 *Taylor's Landlord and Tenant*, sec. 508) which is what McRae tried to do, no surrender was effected. The Court held, however, that had the Cooke to McRae deal been an *assignment* that then the extension of the terminal date by Wise to Groverman with McRae's consent for a period beyond the original terminal date would have constituted a surrender of the original lease and a release of Cooke from liability for rents thereunder. The opinion of the lower Court was reversed *only* as to the question of interest (not involved in the case at bar) and the effect was to adopt the ruling of the lower Court upon

the other issues. (See Statement of Judge Roane in the review of the case in 3 Hening & Munford, at page 492). The Court had there said:

> If it were an assignment, the agreement between McRae and the plaintiff (landlord) and the subsequent lease from the plaintiff to Groverman, would operate as a surrender of the premises to the plaintiff (landlord) and consequently discharge the defendant (tenant) from any liability.

It is accordingly the Court's view that the execution of the agreement between plaintiff and Hollywood, which extended the term and offered an option not contained in the original lease, constituted a new lease agreement between plaintiff and Hollywood which effected a surrender of the old lease by operation of law and relieved West of liability for any waste occasioned *after* September 8, 1955.

### Covenant to Leave Premises in Good Repair

It is the contention of the defendant Cooper that there was no duty upon him under the terms of the lease nor is any duty alleged in the pleadings, to leave the premises at the termination of occupancy, in a state of good repair. This defense is equally available to West. Cooper's motion, which is treated as a demurrer, poses the question: "Is a tenant, under a covenant to return the premises in good repair, liable for the repair of damage occasioned the premises during his tenancy but due to no negligence upon his part?" See an exhaustive opinion prepared by Judge Young in the case of *First & Merchants, etc. v. Featherston et al.*, Case No. A-7862, Ended File No. C-1564, tracing the history of the various statutes relating to this subject back to 1774.

We are, at the outset, confronted with the problem that the lease in question contains no such covenant. I find no case which holds that such covenant is implicit

in the lease itself but even if it be assumed, for purposes of discussion, that such covenant is implied in the lease in question the result would be the same.

At common law a covenant to leave the premises in good repair, natural wear and tear excepted, imposed absolute liability upon the tenant regardless of negligence. This was changed by the Virginia legislature in 1919 by section 5180, which was the forerunner of our Code section 55-226, the pertinent part of which reads:

> No covenant or promise by a lessee. . . that he will keep or leave the premises in good repair shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part. . . binding him to make such repairs. . . unless there be other words showing it to be the intent of the parties that he should be so bound.

In commenting upon this statute, the Court in *Powell v. Orphanage*, 148 Va. 331 (1927), has this to say:

> The covenant to leave the premises in good repair, unaffected by statute, was not a covenant to use due care to leave them in good repair, but an absolute covenant to do a specific thing, to-wit, to leave the premises in good repair. This imposed upon the defendant a nonassignable duty from which he could not relieve himself by the employment of an independent contractor, or otherwise. This was the common law rule, and apparently the duty sought to be imposed by the objectionable instructions. But the common law rule has been radically changed by section 5180 of the Code, and the liability of the tenant made dependent upon whether or not there was "fault or negligence on the part of the lessee." "Fault," as used in the statute means the "omission" of some duty which the tenant ought to perform, and is practically synonymous with negligence. So that the liability of the tenant, under the statute, becomes a

question of negligence. The statute determines the interpretation of a covenant to leave the premises in good repair. . . .

It is not claimed, and could not be, that there are any "other words" in the lease showing an intent on the part of the lessee to be bound to make repairs except the covenant that he "will leave the premises in good repair, ordinary wear and tear excepted." The statute says that this covenant did not bind the lessee to repair or rebuild if he was "without fault or negligence." (Italics supplied.)

Plaintiff relies upon *Kavanaugh v. Donovan*, 186 Va. 85 (1947), but the expressions of the Court in this case support defendant's position. In *Kavanaugh* the parties had intended to accomplish a demise of property by a written lease which contained the customary covenant to surrender in a good state of repair. Being unable to agree upon other provisions of the lease, however, it was never executed, the lessee holding and paying rent under a verbal arrangement. Upon vacation of the premises plaintiff sued for waste, claiming numerous items of damage to roof, floors, windows, etc. He sued in tort (since the lease was never executed). The Court held that the action being in tort, liability had to be founded upon negligence. The Court then held that there was no distinction, in this respect, between actions in tort and those in contract. The Court says:

> Negligence being essential to a recovery on an action on a covenant or promise under our statute (sec. 5180), it would seem just as essential when the action is in tort. No valid reason exists for a distinction.

Moreover, since the burden is upon plaintiff to prove that the waste complained of was occasioned by negligence of the tenant, (*see Moses v. Old Dominion Iron, etc.*, 75 Va. 95 (1880), and *Powell v. Orphanage, supra*) the absence of an allegation to this effect in the motion for judgment would be fatal.

For the above reasons it is held that (a) negligence of the tenant must be shown to be the cause of waste as a condition precedent to recovery by the landlord under a covenant to return the premises in good condition and (b) that the burden being upon the landlord to establish such negligence, it must be alleged in the motion for judgment.

As indicated, at the outset, this point should be raised by demurrer rather than by motion requesting a Court ruling upon the abstract question as presented. Counsel for both defendants may, therefore, prepare and file demurrers upon these grounds and present sketches for orders sustaining the demurrers. Since demurrers will be sustained for both defendants it is unnecessary to pass upon defendant West's motion for summary judgment.