INSLEY *v.* MYERS

[No. 80, October Term, 1948.]

294

*Decided February 10, 1949.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Stanley G. Robins,* for the appellant.

*E. Dale Adkins, Jr.,* with whom were *Woodcock, Webb,
Bounds & Travers* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellee sued the appellant in the Circuit Court
for Wicomico County to recover rent claimed to be due
under a lease of theater property at Virginia Beach,
Princess Anne County, Virginia. The lease was executed

on August 1, 1947 for a period of five years, beginning on January 1, 1948, at a term rental of $18,000, payable in monthly installments of $300 each on the first of each month. It appears from the lease that there was some back rent due, and the lessor acknowledges receipt of $1,000 to apply to such rent, and the lessee agrees to pay the lessor the additional sum of $2,600 on January 1, 1948, to be applied to the payment of the rent due for the last year. The declaration alleged that the appellant has been in possession of the premises, but has not paid the rental installments due for January, February, March, and April, 1948, and has not paid the $2,600 back rent. Pleas were filed, the appellee filed a motion for summary judgment, with affidavit, and the appellant filed an affidavit opposing such motion. The case was heard on the motion and, it appearing to the court that there was no dispute as to any material fact, and that the appellee was entitled to judgment as a matter of law, judgment was entered for the plaintiff for $3,800, with interest and costs. From this judgment the appeal was taken.

The lease involved was executed in the State of Virginia and the property is located in Virginia. The case therefore is governed by the law of Virginia. It is brought in Maryland because the defendant is a resident of this State. There does not seem to be any difference between the law of Virginia and the law of Maryland on any question involved in the case. The point at issue is whether there is any ambiguity in the lease, so that the defendant is entitled to offer parol testimony to explain it. If that contention, made by the appellant, is correct, then, of course, a summary judgment should not have been entered, but the case should have been allowed to go to trial on the pleadings. On the other hand, if there is no ambiguity, then the lower court was correct in entering the judgment.

The lease commences as follows: "This agreement of lease, Made this 1st day of August 1947 between Edward Myers, hereinafter called lessor, and Lee W. Insley (with the right to assign this lease to any corporation controlled

by said Lee W. Insley as to stock ownership, without otherwise waiving any covenants against assignment hereinafter contained). (All words herein referring to Lessee to be taken to be of such gender and number as the circumstances may require), hereinafter called tenant, Witnesseth, * * *"

The twelfth paragraph provides: "Twelfth.—All rights and liabilities herein given to or imposed upon either of the parties hereto shall extend to the heirs, executors, administrators, successors, and so far as same is assignable by the terms hereof, to the assigns of such parties."

The defendant's plea sets out that defendant, with reasonable promptness after the execution of the lease, formed a corporation under the laws of the State of Virginia known as the "Roland Theater Corporation", and that he is the holder of stock sufficient in amount to control same, and that he thereupon assigned the lease to that corporation, thus relieving himself of liability for the payment of the rent. In his affidavit opposing the motion for summary judgment, he sets out that he entered into the lease "with the distinct agreement and understanding with the plaintiff that in the event he should effect the formation of a corporation, to be controlled by him as to stock ownership, he would have the right to assign said lease to such corporation and *relieve himself of liability for the payment of rent herein sought to be recovered.*" (Emphasis supplied.) His claim is that there is an ambiguity in the lease whether or not the assignment to the corporation formed in the opening paragraph would relieve of liability for the rent thereafter under the provisions of paragraph twelve. He desires to offer parol testimony to show what the parties intended by this opening clause in connection with the twelfth paragraph. It is, in reality, the twelfth clause only, which he construes as ambiguous, and desires to interpret by means of parol testimony. The question is whether the liability to pay the rent, thereby extended to his assignee, is, by the same words, lifted from his shoulders, so that he is no longer responsible.

The general law is that *expressed* stipulations in a lease continue to be binding on the lessee, in spite of an assignment and its recognition by the landlord, one of those expressed stipulations being the covenant to pay rent. *Tiffany, Modern Law of Real Property,* 1903 Ed., Vol. 1, p. 107. This is also the Maryland law, *Worthington v. Cooke,* 56 Md. 51, at page 53; *Consumers' Ice Co. v. Bixler & Co.,* 84 Md. 437, at page 447, 35 A. 1086; *Baltimore City v. Peat,* 93 Md. 696, at page 699, 50 A. 152, 698, and the law of Virginia. *Farmers' Bank v. Mutual Assur. Soc.,* 4 Leigh, Va., 69, page 84; *Powell v. John E. Hughes Orphanage,* 148 Va. 331, 138 S. E. 637, at page 646. The Supreme Court of Appeals of Virginia in this last mentioned case cited as authority the case of *Kanawha-Gauley Coal & Coke Co. v. Sharp,* 73 W. Va. 427, 80 S. E. 781, 783, 52 L. R. A., N. S., 968, Ann. Cas. 1916E, 786; in which there is a full discussion of the subject in a case quite similar to the one before us. In that case, a lease was made to the defendant, although it was in fact obtained for a mining corporation to be organized later by him, and this was set out by a stipulation in the lease itself. The corporation was organized and subsequently, with the lessor's consent, the lessee and the new corporation assigned the lease to a second corporation. Under these circumstances, the West Virginia court set out the distinction between privity of contract and privity of estate. When the lessee parts with the estate, with the consent of the lessor, he thereby destroys the privity, and there is no further obligation on his part to pay rent, unless he is bound by a covenant, but if he has expressly covenanted to pay, he is held in privity of contract, which lasts until the contract is discharged. Under such circumstances, the lessor has the right to proceed against the original lessee, and also the assignee, although, of course, he can obtain but one satisfaction of his debt. The court said: "While the privity of estate between plaintiff and Sharp was terminated by the transfer, the latter nevertheless remained liable, at

the option of the former, for rent thereafter accruing, because of the continuing privity of contract".

The appellant admits that the foregoing correctly states both the general law and the Virginia law, but earnestly contends that the lease in the case before us is ambiguous, and therefore he is entitled to explain it by parol evidence, although he cannot attempt to vary, alter, or contradict its provisions. He relies in this connection upon the case of *Piedmont Hotel Co. v. A. E. Nettleton Co.*, 263 N. Y. 25, 188 N. E. 145. In this case, there was a provision in the lease that in the event it was assigned, the assignee should become liable directly to the lessor "without relieving any liability of the Lessee". There was also a provision inserted that the lessor understood that the lessee would cause to be formed under the laws of the State of New York, another named corporation, and when the same was fully qualified to do business in the State of Georgia, the lessor agreed that the lease "together with all its rights, duties, and obligations, shall be assigned and transferred" from the lessee to the new corporation. The New York court found that this last clause which directed a transfer of the obligations of the lease to the new corporation, when considered in connection with the earlier provision that an assignment could be made without relieving any liability of the lessee, constituted an ambiguity, and therefore a summary judgment should not have been entered, but parol testimony should have been admitted to explain the ambiguity. This case, however, differs from the case before us in the important particular that in the New York case, the obligations were to be *transferred*, which means to cause to pass to another person, and, in view of the other provision, did cause the lease to be ambiguous and required an explanation. In the case before us, the liability is not transferred, but *extended* to the assignee. "Extended" has no such meaning as "transfer". It means to widen, or spread, so that the twelfth clause increases the sources from which the lessor may collect his rent by giving him an additional party to whom the liability to pay has spread.

This clause does not disturb the general law which we have already discussed, that the lessee is bound by his privity of contract to pay the rent. It does not affect the original lessee, but is operative upon the assignee.

The general rule as to the construction of contracts, and the admission of oral testimony to explain their meaning, is set out in *Restatements, Contracts,* Paragraphs 230 and 231, which reads as follows:

"230. The standards of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.

"231. Where application to an integration of the standard of interpretation stated in Paragraph 230 produces an uncertain or ambiguous result, the rules governing the interpretation of agreements which have not been integrated are applicable."

This doctrine has been approved by this court in the case of *McKeever v. Washington Heights Realty Corporation,* 183 Md. 216, at page 220, 37 A. 2d 305, and in a later case, *Rogan v. Baltimore & Ohio R. Co.,* 188 Md. 44, 55, 52 A. 2d 261, at page 266, where it is said: "* * * But where a contract is plain and unambiguous, there is no room for construction, for the parties must be presumed to have intended what they expressed."

Professor Wigmore, in his work on *Evidence,* states that the history of the law of interpretation is the history of a progress from a stiff and superstitious formalism to a flexible rationalism, but while he says that the old rule has been much liberalized, it still survives. He states (Vol. IX, 3rd Ed., par. 2472, p. 233: "* * * declarations of intention, though ordinarily excluded from consideration, are receivable to assist *in interpreting an equivocation*—that is a term which *upon application to*

*external objects* is found to fit *two or more of them equally"*, and, in Paragraph 2461, pp. 190-191, writing of the Law of England, "It now conceded that the sense of words is not fixed by rules of law; that the extreme of the old rule had disappeared. But it insisted that *when the meaning is 'plain'*—that is, plain by the standard of the community and of the ordinary reader—*no deviation can be permitted.* * * * Such is the rule still surviving to us, in many Courts, from the old formalism, namely, the rule that you *cannot disturb a plain meaning."* And in Paragraph 2463, pp. 201-202: "In *deeds and contracts,* this traditional rule finds constant and dominant application in excluding the mutual standard, *i. e.,* the agreement of the *parties themselves* upon a special sense for their words", and, in Paragraph 2466, pp. 216-217: "When a party takes part in a *bilateral* act—*i. e.,* a transaction in which other persons share—he must accept a common standard; he cannot claim to enforce his individual standard of meaning. * * * The person using words is to be treated from the point of view of the reasonable man, not only in determining the actual tenor of his act, but also in interpreting it.

In *Williston on Contracts,* Rev. Ed., Vol. 3, Sec. 613, pp. 1763-1764, it is stated: "It is often said that direct evidence of intention is admissible in case of equivocation * * *. But it should be observed that it is not primarily the intention of the parties which the court is seeking, but the meaning of the words at the time and place when they were used. The fact that the parties intend their words to bear a certain meaning would be immaterial were it not for the fact that the words, either normally or locally, might properly bear such meaning, and this is the basis of the rule in regard to equivocation."

In the Virginia case of *Powell v. John E. Hughes Orphanage, supra* [148 Va. 331, 138 S. E. 642], the court said: "The chief objection raised to these instructions is that they took away from the jury the consideration of all evidence tending to show that the parties 'originally intended' that W. D. Powell & Co., Inc., was to be com-

pletely substituted for W. D. Powell in the lease to the latter, and that he should be released from his covenant in the lease to leave the property in good repair. The objection is not sound. It is wholly immaterial what the parties 'originally intended'. When they entered into the contract of lease, all prior negotiations on the subject covered by the contract, oral or written, all prior understandings, intentions, and agreements became merged in the contract, and the contract became the sole memorial of the agreement of the parties. The law conclusively presumes this and will hear nothing to the contrary."

We think that the clauses in the lease before us contain no such ambiguity or possibility of double meaning as to justify the admission of oral evidence to explain them, or to give them any meaning, by the interpretation of the parties different from that plainly expressed by their written words. They have said what they meant, and if they, or either of them, intended anything other than what they said, they have foreclosed their right to explain it by the use of exactly understood words which they cannot go behind and try to disavow. There was no occasion for the admission of any oral testimony, and there was no authority in the court to permit such testimony, under the circumstances. The trial judge was entirely correct in granting the motion for a summary judgment, and the result, in the form of the judgment entered by him, will be affirmed.

*Judgment affirmed, with costs.*