WEINBERG ET UX. *v.* BALTIMORE AND ANNAPOLIS RAILROAD COMPANY

[No. 167, October Term, 1951.]

*Decided May 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellants.

*George Cochran Doub,* with whom were *Marshall, Carey, Doub & Mundy* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a declaratory "judgment and decree" that a lease between the appellee, the Baltimore and Annapolis Railroad Company, (B. & A.), and the appellants, Harry Weinberg and Jeanette Weinberg, (the Weinbergs) became validly terminated on October

21, 1951, and all liability of the appellee for rent under the lease terminated on that date.

The petition for declaratory judgment alleged, among other things, that by lease dated February 25, 1948, the appellee, B. & A., leased from the Weinbergs for use as its Baltimore office, the premises at 204 and 206 West Camden Street, Baltimore, Maryland, for a term of five years from February 1, 1948, to January 31, 1953. This lease contained a clause which provided for termination by B. & A. before the end of the term as follows: "IT IS UNDERSTOOD AND AGREED that should the Tenant in its operation of its business *acquire its own bus terminal,* that in that event Tenant shall have the right to terminate this Lease upon giving the Landlord ninety days previous notice in writing and all liability for rent shall cease upon payment proportionately to date of such termination." (Emphasis supplied here). A preceding lease for the same premises between the same parties covering the period from December 18, 1937, to January 31, 1948, contained no such provision for termination. The petition also contained the following:

"At the time of execution of the said Agreement of Lease dated the 25th day of February, 1948, Petitioner's principal business was the operation of an interurban electric railway for the transportation of passengers and property between Annapolis and the Camden Station of the Baltimore & Ohio Railroad Company in the City of Baltimore, the State of Maryland. Petitioner's rail passengers used the station facilities of Camden Station. A limited bus service was also operated by Petitioner from Baltimore to intermediate points in Anne Arundel County for which the Petitioner had no bus terminal of its own in Baltimore City but, instead, picked up and discharged passengers at the sidewalk on Camden Street in front of the Camden Station of the Baltimore and Ohio Railroad Company.

All of Petitioner's terminal activities were, at that time, in the immediate vicinity of its office leased from Defendants. At the time of the execution of said Agreement of Lease dated February 25, 1948, Petitioner was developing plans for institution of an expanded bus service between Baltimore and Annapolis. Officials of the City of Baltimore likewise had initiated negotiations with the officials of the Petitioner for the purchase by the City of Baltimore of certain land and rights of way of Petitioner in South Baltimore required by the City for the construction of its new non-access super highway or freeway designed to bring the new super highway into Baltimore from Washington. Such a purchase by the City of Baltimore would require the discontinuance of the transportation of passengers by Petitioner's interurban electric railway between Camden Station, Baltimore and Annapolis. Since the execution of said Agreement of Lease, Petitioner entered into a contract for the sale of said property to the City of Baltimore and after approval by the Public Service Commission of the discontinuance of its transportation of passengers by interurban electric railway between Camden Station, Baltimore, and Annapolis as in the public interest, said service was discontinued by Petitioner and said property sold and conveyed to the City of Baltimore. Petitioner likewise instituted an expanded bus service between Baltimore and Annapolis in substitution for its rail passenger service. As a consequence, it became essential for Petitioner to acquire its own bus terminal in the City of Baltimore * * *."

By lease, dated January 31, 1950, the B. & A. leased, for a bus terminal and for other purposes incidental to the conduct of the business of transporting passengers and freight, from Harry G. Pappas and others a prop-

erty known as 100 S. Howard Street, Baltimore. The term of this lease was for ten years, beginning on February 5, 1950, and ending on February 5, 1960, with the provision "that the lease shall continue thereafter for additional terms of one (1) year each unless and until either party hereto shall give to the other at least ninety (90) days' written notice of termination thereof prior to the 5th day of February, 1960, or the 5th day of February of any year thereafter." The B. & A. made arrangements to utilize office space within this newly acquired terminal at 100 S. Howard Street in order to conduct its operation more efficiently by the consolidation of its terminal and office facilities within one building. On July 23, 1951, the B. & A. notified the Weinbergs by letter that it "having acquired its own business terminal in the operation of its business, hereby gives notice of termination of the above described lease ninety (90) days from date. * * *" By letter, dated July 30, 1951, counsel for the Weinbergs notified B. & A. that he had notified the Weinbergs that "Unless the Baltimore and Annapolis Railway Company owns its bus terminal by a title deed that the lease is still in effect and cannot be terminated." To settle this controversy a declaratory decree was asked.

From the declaratory decree that the lease between the B. & A. and the Weinbergs terminated on October 21, 1951, and that all liability of B. & A. for rent under said lease terminated upon payment of rent proportionately to October 21, 1951, the appellants appeal.

The appellants contend that the intention of the parties was that only where the tenant, B. & A., acquired title to a terminal of its own by buying the same or acquiring ownership in some other way, was it released from liability for rent under the lease with the appellants.

Appellants here point out that, although B. & A. leased on January 31, 1950 the Howard Street property beginning on February 5, 1950, it did not notify them of the termination of the lease until July 23, 1951, almost eighteen months later. They contend in this Court for

the first time that by this delay appellants were estopped from terminating the lease and this delay shows that it was not the intention of the parties that the mere leasing of another property would give B. & A. power to terminate the Weinberg lease. This contention was not raised below in either the pleading or the testimony. There was no testimony as to any explanation of this delay, or that the right to terminate had to be exercised within a reasonable time, or what was a reasonable time of termination. This point or question was not presented to or decided by the court below and it therefore cannot be decided here. Rule 9 of the Court of Appeals; Code 1939, Article 5, Section 10; *Metropolitan Life Ins. Co. v. Neikirk,* 175 Md. 163, 170, 200 A. 370.

The appellants contend that they should have been permitted to testify to the contemporaneous conversations when the lease with them was signed so as to show the intention of the parties. It is not necessary that we pass upon this question. No such evidence was excluded by the trial court. The lower court did sustain objections to questions asked Mr. Weinberg as to his interpretation of the right to terminate the lease, and as to discussions *prior to this negotiation* of the lease, but not collateral to or contemporaneous therewith. These objections were properly sustained. *Lambdin v. Dantzebecker,* 169 Md. 240, 181 A. 353, 102 A. L. R. 277; *Insley v. Myers,* 192 Md. 292, 64 A. 2d 126.

There does not seem to be any dispute that the word "acquire" means "to become the owner of property" or "to make property one's own". In the final analysis "acquire" imports "ownership". *Wulzen v. Board of Supervisors,* 101 Cal. 15, 35 Pac. 353; *Commissioners v. Broad Street Mutual Casualty Insurance Co.,* 1942, 312 Mass. 261, 44 N. E. 2d 683, 143 A. L. R. 982; *Helvering v. San Joaquin Fruit and Investment Co.,* 1936, 297 U. S. 496, 56 S. Ct. 569, 80 L. Ed. 824; *United States v. Hibernia Bank Building,* D. C. La., 1948, 76 F. Supp. 18, 19. It was said in *Shaw v. Dreyfus,* D. C. S. D. N. Y., 79 Fed. Supp. 533, 536: "The word 'acquire' connotes

the obtaining of something which was ·not possessed previously."

The appellant relies strongly on the case of *Sheppard Etc. Hospital v. Swift & Co.*, 178 Md. 200, 13 A. 2d 174. In that case there was a condition in the lease that if the sublessor at any time acquired the fee simple in the property certain rights accrued. This Court there held no matter how acquired an interest in land which involved the absolute and exclusive control and dominion thereover was an estate in fee simple. In the case before this Court there is no mention of a fee simple acquisition in the lease.

In Baltimore and Ohio Railroad *Company v. Walker,* 1888, 45 Ohio St. 577, 16 N. E. 475, it is said at page 480: "The terms 'owner' and 'owing' depend somewhat for their signification upon the connection in which they are used. 'To own' is defined, 'to hold as property; to have a legal or rightful title to; to have; to possess.' And an owner is 'one who owns; a rightful proprietor.' *An owner is not necessarily one owning the fee-simple, or one having in the property the highest estate it will admit of.* One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property, vested in different persons, and each be an owner thereof." (Emphasis supplied.)

It is stated in *Restatement of the Law—Property—* Section 10, Owner: "The word 'owner,' as it is used in this Restatement, means the person who has one or more interests." Under Comment (c) it is stated: "The same usage as to the words 'owner' and 'own' applies both in this Restatement and as a matter of popular usage to any smaller aggregate of interests. Thus a person who owns an easement or an estate for years may part with some of the interests that compose the easement or estate for years and his relation to the easement or the estate for years will still be termed ownership." See *Judd v. Landin,* (Minn.) 1, N. W. 2d 861.

It is stated in *Tffany, Real Property,* (3rd Edition) Section 2: "The most important rights in land are

those to which we apply the term 'ownership', involving, within limitations more or less wide, the idea of rights in some particular person or persons (the owner or owners) to use the land according to his or their pleasure, and to demand that others refrain from such use, the word 'ownership' being used without reference to the greater or less duration of the rights involved. * * * While it is usual to speak of the 'ownership of land', what one owns is properly not the land, but rather the rights of possession and approximately unlimited user, present or future. In other words, one owns not the land, but rather an estate in the land."

Certainly at the time of the execution of the lease in question with the Weinbergs, B. & A. had no bus terminal of its own because it picked up and discharged passengers at the sidewalk on Camden Street in front of the Camden Station of the Baltimore and Ohio Railroad Company. By the new lease with Mr. Pappas and others it acquired for a ten year period with right of renewal a large bus terminal. The lease did not say that it might be terminated if B. & A. "purchased its own bus terminal" or "acquired a fee simple title in its own bus terminal". If this had been desired by the appellants and the appellee had agreed, these words could easily have been inserted. If the lease had been for ninety-nine years, instead of ten years with right of renewal, appellants could hardly have contended that appellee had not acquired a bus terminal of its own. A difference in the length of the lease could hardly determine the question here. It appearing under the authorities hereinbefore cited that the words "acquire its own bus terminal" mean that the appellee must become the owner of the bus terminal, not necessarily in fee simple but by ownership of an interest or estate therein as here acquired, the decree will be affirmed.

*Declaratory decree affirmed, with costs.*