**In re MERRY–GO–ROUND ENTERPRISES, et al., Debtors.**

**Bankruptcy No. 94–5–0161–SD.**

United States Bankruptcy Court,
D. Maryland,
Baltimore Division.

Oct. 15, 1999.

Cynthia L. Leppert, Neuberger, Quinn, Gielen, Rubin & Gibber, Baltimore, MD, for the trustee.

Stephen A. Bogorad, Philip T. Evans, Holland & Knight, Washington, DC, for The Equitable Life Assurance Society of the United States.

Billy G. Leonard, Jr., Strasburger & Price, Dallas, TX, for Sharpstown Center Associates.

Scott A. Semenek, Rudnick & Wolfe, Chicago, IL, for The Lake County Trust Company.

Kevin M. Newman, Menter, Rudin & Travelpriece, Syracuse, NY, for Carousel Center Company, LP.

Karen H. Moore, Assistant U.S. Trustee, Office of the U.S. Trustee, Baltimore, MD, for the U.S. Trustee.

*CONCLUSIONS OF LAW IN ANTICIPATION OF AN EVIDENTIARY HEARING ON TRUSTEE'S TWELFTH OMNIBUS OBJECTION TO CLAIMS*

E. STEPHEN DERBY, Bankruptcy Judge.

Before the court is the Twelfth Omnibus Objection to Claims (the "Objection") filed by the Chapter 7 Trustee ("Trustee"). In her Objection the Trustee argues that the claims of four landlords whose leases were assumed by the Debtor–In–Possession during the Chapter 11 phase of this case and subsequently rejected by the Trustee in Chapter 7 are not administrative expenses and are not calculated correctly. The landlords are: Sharpstown Center Associates (claim no. 6048) ("Sharpstown"); Equitable Life Assurance Co. (claim nos. 8149 and 8157)[1] ("Equitable"); Lake County Trust Co. (claim no. 6895) ("Lake County"); and Carousel Center Co. (claim no. 6957) ("Carousel") (collectively the "Landlords"). Each Landlord has responded to the Objection.

The Objection has been bifurcated at the request of the parties, and the court will address here only the governing legal issues. These legal issues are: (1) whether the Landlords' lease rejection claims are administrative expenses; (2) what are the Landlords' obligations as to mitigation of damages; and (3) whether lease rejection claims should be reduced to present value. Two additional legal issues woven through the first three are (a) what law applies; and (b) who bears the burden of proof at various points in the analysis. For reasons discussed below, the court concludes:

(1) the Landlords' lease rejection claims are Chapter 11 administrative expenses; (2) the Landlords have a duty under the law of the state in which each property is located to mitigate the lease rejection damages; and (3) under applicable state law, lease rejection damage claims must be reduced to present value. On the issues of mitigation and damages, the burden of going forward and the burden of persuasion may alternate.

**Background**

Merry–Go–Round Enterprises, Inc. ("MGRE"), the Debtor and Debtor–In–Possession, was a retailer of young men and women's fashion clothing. MGRE was the lessee of approximately 1450 retail locations throughout the United States. MGRE filed a voluntary Chapter 11 bankruptcy petition in January, 1994. This court converted the case to Chapter 7 on March 1, 1996, after the reorganization effort failed. While the case was still in Chapter 11, MGRE assumed the five leases with these four landlords. After conversion, the Trustee rejected these five leases.

**Discussion**

A. *The Landlords' lease rejection claims are Chapter 11 administrative expenses.*

After the Objection was filed, the United States Court of Appeals for the Fourth Circuit entered its decision in *In re Merry–Go–Round Enterprises, Inc.*, 180 F.3d 149 (4th Cir.1999), (affirming D.C.D.Md., which had affirmed 208 B.R. 637 (Bankr. D.Md.1997) ("*Cutler Ridge*")). *Cutler Ridge* involved claims of a landlord that had entered into a postpetition lease with MGRE, which the Trustee declared rejected after conversion. In concluding that the landlord's future rent claim was a Chapter 11 administrative expense, the court noted that "an assumed lease is func-

---

1. Equitable was the landlord for two separate leases, one at the Northland Mall in Springfield, Michigan ("Northland"), and the other at the Eastland Mall in Evansville, Indiana ("Eastland").

tionally equivalent to a postpetition lease. . . ." *Cutler Ridge*, 180 F.3d at 156, 158. In reaching its decision the court relied heavily on *In re Klein Sleep Products, Inc.*, 78 F.3d 18 (2nd Cir.1996), a case in which, as here, the debtor-in-possession had assumed a prepetition lease that the Chapter 7 trustee rejected post-conversion. As the Fourth Circuit stated:

> We believe that this authority [*Klein Sleep* and *In re Lamparter Org., Inc.*, 207 B.R. 48 (E.D.N.Y.1997)] is equally applicable in this case because *the perfection of a new postpetition lease is analogous to the postpetition assumption of a prepetition lease* in that the debtor-in-possession undergoes the same deliberative process when it enters into a new lease as when it assumes an old one. When considering whether or not to enter into a new lease, the debtor-in-possession examines a draft lease and determines whether or not it would be in the best interest of the estate. If the debtor-in-possession concludes that the new lease would be in its best interest, it seeks approval from the bankruptcy court. Likewise, when considering whether or not to assume an unexpired lease, the debtor-in-possession examines the unexpired lease and determines whether or not it would be in the best interest of the estate. If the debtor-in-possession concludes that the lease would be in its best interest, it assumes the unexpired lease and seeks approval from the bankruptcy court.

*Cutler Ridge*, 180 F.3d at 155 (emphasis added).

Because the Fourth Circuit found that assumed leases and new leases entered into postpetition are functionally analogous, this court must make the same inquiries in response to this Objection as were made by the Fourth Circuit in *Cutler Ridge.*

■ As with any other administrative claim, determining whether future rent is entitled to administrative priority is to be determined on a case-by-case basis. *Cut-*

*ler Ridge*, 180 F.3d at 156. In making such a determination, the claimant "has the burden of proving that its administrative claim for future rent is an actual and necessary expense." *Id.* at 157. *See also* 11 U.S.C. § 503(b)(1)(A). Further,

> For a claim to qualify as an actual and necessary administrative expense, "(1) the claim must arise out of post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business."

*Cutler Ridge*, 180 F.3d at 157 (quoting *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n. 2 (4th Cir.1995)).

■ "The test to determine actual expense is whether the claim arose out of a post-petition transaction between [the landlord] and MGRE." *Cutler Ridge*, 180 F.3d at 157. In *Cutler Ridge* the Fourth Circuit held that entering into a new lease postpetition was a postpetition transaction. *See id.* The Landlords' leases were assumed by MGRE postpetition, and "an assumed lease is functionally analogous to a postpetition lease. . . ." *Id.* at 156. Therefore, the assumption of each of the leases was a postpetition transaction between MGRE and the respective Landlord, and the leases were actual costs of preserving the estate.

■ "The test to determine necessary expense is whether [the landlord's] consideration supporting its right to payment was 'supplied to and beneficial to' MGRE." *Cutler Ridge*, 180 F.3d at 157 (quoting *Stewart*, 64 F.3d at 145 n. 2). To make this determination the court must look at whether the leases were beneficial to the bankruptcy estate of MGRE both before and after conversion. *See id.* at 157.

■ The Trustee and the Landlords agree that the leases were beneficial to MGRE prior to conversion. Further, "assumed contracts do in fact constitute a

post-bankruptcy benefit to the estate." *Klein Sleep*, 78 F.3d at 25. These assumed leases provided a benefit to MGRE, as debtor in possession, because the MGRE estate, in anticipation of a successful reorganization, gained the opportunity to use the premises for the remainder of the lease terms. This court allowed MGRE to assume the leases because it found that MGRE had used sound business judgment in determining that assuming each of the leases was in the best interest of the estate. *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir.1985). The action of this court in approving MGRE's assumption of the leases precludes a subsequent finding that MGRE's assumption of the leases was not a benefit to MGRE. See *Klein Sleep*, 78 F.3d at 25. MGRE's assumption of these leases thus provided a pre-conversion benefit to MGRE, and this benefit in expectation extended to the full term of the assumed leases. The Landlords also benefited from the certainty of status and expectation of payment provided by MGRE's assumption.

■ In determining whether assumption of the leases provided a necessary post-conversion expense to the estate, the court must look at the assumption from both the Landlords' and the Trustee's perspectives. *See Cutler Ridge*, 180 F.3d at 157. When considering the landlord's position in *Cutler Ridge*, the Court of Appeals stated:

As far as the landlord, DeBartolo, is concerned, Chapter 7 conversion did not change the lease. Although conversion dramatically altered the character of MGRE, DeBartolo still expected MGRE to honor its lease agreement. If MGRE had been able to sell the lease to another party, DeBartolo would have continued to receive rent payments. Unfortunately, despite its best efforts, MGRE was unable to relet the premises.

180 F.3d at 157. The Landlords in this Objection expected the same benefits. When the leases were assumed by MGRE while it was seeking to reorganize under Chapter 11, the Landlords had an expectation that they would continue to be paid, and this expectation continued after conversion until the Trustee rejected the leases. Consequently, the leases provided the Landlords with an expected post-conversion benefit.

The Trustee also enjoyed post-conversion benefits. In *Debartolo Properties Management, Inc. v. Devan*, 194 B.R. 46 (D.Md.1996), the District Court held in this case that all leases that had not been assumed were deemed rejected as of January 31, 1996, and that the landlords with these deemed—rejected leases were entitled to immediate possession of their properties. *See id.* at 52. If the instant leases had not been assumed, the Trustee would not have had the right to use each of these locations to conduct going out of business ("GOB") sales. The GOB sales provided a benefit to the Chapter 7 estate because the Chapter 7 estate reaped the benefits of the sales. Further, the Trustee would not have had the right to assign the leases if they had not been assumed. The Trustee's opportunity to attempt to market the leases was itself a benefit to the Chapter 7 MGRE estate, even though it was not successful. In fact, the Trustee requested an extension of time to decide whether to assume or reject the leases. *See* Emergency Motion of Chapter 7 Trustee to Extend the Period Within Which to Assume or Reject Certain Unexpired Leases of Nonresidential Real Property Pursuant to Section 365(d)(4) of the Bankruptcy Code, P. 4802 (Apr. 24, 1996). One of the reasons she gave for needing an extension was that she required time to decide which leases could be assigned. *See id.* ¶ 13. Consequently, it appears the Trustee received a post-conversion benefit from each of the leases. Because both the Landlords and Trustee received a post-conversion benefit from the leases, each lease was a necessary expense of the Chapter 7 estate prior to its rejection.

In light of these findings, there is no merit in the Trustee's argument that there is no demonstrated benefit to the Chapter 11 estate to support administrative treatment of the Landlords' future rent rejection damages. Further, not only did the Court of Appeals in *Cutler Ridge* (180 F.3d at 156) find an assumed lease and a post-petition lease functionally analogous, but the future expectation of the parties and the benefits anticipated by MGRE for its reorganization are analogous. The Trustee argues that a supporting policy justification for finding a postpetition lease to be a necessary expense in *Cutler Ridge* is not present, namely, to provide an incentive for landlords to deal with a tenant in Chapter 11. This policy justification was not the court's only reason, however, and the analogous reason for recognizing a lease assumption as necessary is to provide certainty to landlords and Chapter 11 tenants, thereby enhancing the possibility of a successful plan of reorganization with mutual cooperation.

There is no corresponding benefit, however, to the Chapter 7 estate from the already assumed leases that the Trustee inherited. The benefits to the Chapter 7 bankruptcy estate were limited to the actual use of premises for the GOB sales and reservation of the premises during the period the Trustee unsuccessfully explored whether the assumed leases could be marketed profitably. See *Cutler Ridge,* 180 F.3d at 162, and below 208 B.R. at 643–44.

The court concludes that the leases were actual and necessary expenses to both the Chapter 11 and Chapter 7 estates. To hold that future rent claims cease to be administrative as soon as Trustee rejects the leases " '... would mean that any post-bankruptcy contract, entered into for the benefit of a bankrupt's estate, would cease to be entitled to priority the moment the deal turned sour.' " *Cutler Ridge,* 180 F.3d at 156 (quoting *Klein Sleep,* 78 F.3d at 26). Recognizing, however, that the future rent claims flow from leases assumed for the benefit of the Chapter 11 estate, the rejection damages under each of the leases is a Chapter 11 administrative expense of the estate. *See Klein Sleep,* 78 F.3d at 22–28.

### B. *The Landlords have a duty to mitigate under applicable state law.*

All parties have briefed whether the Landlords were required to mitigate their damages and whether they have properly mitigated their damages. At this time the court will only resolve legal issues related to mitigation.

As stated in Black's Law Dictionary:

> [The d]octrine of 'mitigation of damages' ... imposes on injured party duty to exercise reasonable diligence and ordinary care in attempting to minimize his damages after injury has been inflicted and care and diligence required of him is the same as that which would be used by man of ordinary prudence under like circumstances. Mitigation of damages is an affirmative defense and applies when plaintiff fails to take reasonable actions that would tend to mitigate his injuries.

Black's Law Dictionary 1001 (6th ed.1990) (citations omitted).

Whether the Landlords properly mitigated their damages must be determined by referring to state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (property interests are determined by state law). Because this court sits in Maryland but each of the properties is located in another state, the court must apply Maryland's choice of law rules to determine what state's law apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 511 n. 5 (4th Cir.1986). The Sharpstown, Northland, Lake County, and Carousel leases all include a choice of law clause that the lease shall be enforced

pursuant to the laws of the state where the property is located. Under Maryland law:

it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction. . . . [The Court of Appeals of Maryland has] also cited with approval and followed Restatement (Second) Conflict of Laws § 187(2) (1971), which adopts this general rule and sets forth the limitations on the parties' choice of law.

*National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610, 650 A.2d 246, 248 (1994). Restatement (Second) Conflict of Laws § 187(2) limits the parties' choice of law if the chosen state has no relationship to the parties or transaction or the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular interest. . . ." Restatement (Second) Conflict of Laws § 187(2) (Supp.1989); *quoted in General Ins. Co. of America v. Interstate Service Co., Inc.,* 118 Md.App. 126, 137, 701 A.2d 1213, 1219 (1997), *cert. denied* 349 Md. 103, 707 A.2d 89 and 350 Md. 276, 711 A.2d 869 (1998). Here, the states chosen by the parties relate directly to the transaction because each lease is to be enforced under the laws of the state where the leased property is located. Consequently, the court will defer to the lease terms and apply the laws of the states where the properties are located.

The Eastland lease does not include a choice of law clause. The lease was apparently executed in Maryland, but the property is located in Indiana. In *Insley v. Myers,* 192 Md. 292, 64 A.2d 126 (1949), the Court of Appeals of Maryland applied the laws of a foreign state because the lease had been executed in, and the real property was located in, that state. *See id.* at 296, 64 A.2d at 127. In *Traylor v. Grafton,* 273 Md. 649, 332 A.2d 651 (1975), the Court of Appeals stated that "[c]ontracts relating to the sale of realty are generally governed by the law of the juris-

diction in which the property is located." *Id.* at 660, 332 A.2d at 659. Based on these two cases, the court concludes that if the Court of Appeals Maryland was presented with these facts, it would hold that the laws of Indiana governed. *See Commissioner of Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967) (if a state's highest court has not resolved an issue, a federal court must apply what it finds to be the state law); *Estate of Casey v. Commissioner of Internal Revenue,* 948 F.2d 895, 898 (4th Cir.1991) (same); *Taylor v. Lotus Development Corp.,* 906 F.Supp. 290, 296 (D.Md.1995) (same). The court will, therefore, apply Indiana's law of mitigation to the Eastland lease.

### 1. *Sharpstown*

▮▮▮ Sharpstown Mall is located in Texas, and the lease states that Texas law applies in any action to enforce the lease. *See* Sharpstown lease ¶ 15.8, attached to Supplement to the Trustee's Twelfth Omnibus Objection to Claims, P. 7056, as Ex. 1 ("Trustee's Supplement"). Under Texas law, a landlord seeking damages for breach of a lease "has a duty to make reasonable efforts to mitigate." *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.,* 948 S.W.2d 293, 294 (Tex. 1997). ". . . [T]he landlord's duty to mitigate requires the landlord to use objectively reasonable efforts to fill the premises when the tenant vacates in breach of the lease." *Id.* at 299. "Further, . . . the tenant properly bears the burden of proof to demonstrate that the landlord has mitigated or failed to mitigate damages and the amount by which the landlord reduced or could have reduced its damages." *Id.*

▮▮▮ The Trustee has alleged that Sharpstown made no effort to mitigate its damages. Under Texas law, this contention is similar to an avoidance defense. *See Austin Hill,* 948 S.W.2d at 300. In other words, if the Trustee shows by a preponderance of the evidence that Sharpstown did not make an effort to mitigate, Sharpstown's entire claim must be

disallowed. If the Trustee, however, shows that Sharpstown mitigated its damages, the claim will be reduced by the amount owed under the remainder of the lease minus the amount realized or the amount that could have been realized through reasonable efforts by Sharpstown to mitigate its damages. *See id.*

### 2. *Northland*

Northland Mall is located in Michigan, and the lease provides that Michigan law applies. *See* Northland lease, Art. 39, attached to Trustee's Supplement as Ex. 3. Under Michigan law "the landlord has a duty to use reasonable efforts to mitigate his damages caused by the breach." *Jefferson Dev. Co. v. Heritage Cleaners,* 109 Mich.App. 606, 311 N.W.2d 426, 428 (1981). However, "[t]he burden is on the tenant to establish that the landlord failed to act reasonably to mitigate damages." *Id.*

The Northland lease also provides that the "Landlord agrees to use reasonable efforts to relet the Premises in order to mitigate damages." Northland lease Rider, Art. 26.

Equitable (Northland's owner) claims that it has mitigated the damages. The Trustee, while conceding that she has received information that a replacement tenant had been found, alleges that Equitable did not act reasonably, and that if Equitable had acted reasonably, the claim would have been fully mitigated. Because this is a factual dispute between the parties, the court cannot rule until after an evidentiary hearing.

### 3. *Lake County and Eastland*

Both the, Glenbrook Mall, which is owned by Lake County, and Eastland Mall are located in Indiana. The Lake County lease provides that Indiana law applies in any action to enforce the lease. *See* Lake County lease § 11.7, attached to Trustee's Supplement as Ex. 4. As discussed above, although the Eastland lease does not have a choice of law provi-

sion, Maryland's choice of law principles require this court to apply Indiana law. Under Indiana law "a landlord is ... required to use such diligence as would be expected by a reasonably prudent person under similar circumstances to re-let the premises...." *Sandor Dev. Co. v. Reitmeyer,* 498 N.E.2d 1020, 1023 (Ind.Ct.App. 1986). If the lease includes a mandatory reletting clause, the landlord bears the burden to show that it exercised due diligence to relet the premises. *Grueninger Travel Service of Fort Wayne, Ind., Inc. v. Lake County Trust Co.,* 413 N.E.2d 1034, 1039 (Ind.Ct.App.1980). When there is no mandatory reletting clause in the lease, the burden of proof as to mitigation is on the tenant. *See id.* at 1039–40.

The Lake County lease provides for mandatory mitigation:

> Upon the happening of any one or more of the above mentioned [defaults by MGRE], Landlord may repossess the Leased Premises ... without demand or notice of any kind to Tenant ... and without terminating this lease, in which event Landlord *shall.* have the duty to use reasonable efforts to mitigate damages....

Lake County lease § 10.1(c) (emphasis added). Therefore, at an evidentiary hearing Lake County will have the burden to show that it used reasonable efforts and due diligence.

The Eastland lease, on the other hand, does not require Equitable to mitigate its damages. The Trustee has alleged that Equitable did not act reasonably to mitigate its damages, and that if Equitable had acted reasonably, it would have suffered no damages. At the evidentiary hearing Trustee will bear the burden of proving that Equitable, the Landlord for the Eastland Lease, did not use such diligence as would be expected by a reasonably prudent person, under the circumstances, to relet the Eastland premises.

#### 4. Carousel

■ Carousel Center Mall is located in New York, and the lease provides that New York law applies in any action to enforce the lease. *See* Carousel lease § 23.14, attached to Trustee's Supplement as Ex. 5. Under New York law a landlord has no obligation to mitigate damages. *See Holy Properties Limited, L.P. v. Kenneth Cole Prods., Inc.,* 87 N.Y.S.2d 130, 637 N.Y.S.2d 964, 966, 661 N.E.2d 694 (1995). However, "[i]f the landlord relets the premises for the benefit of the tenant, the rent collected would be apportioned first to repay the landlord's expenses in reentering and reletting and then to pay the tenant's rent obligation." *Id.*

■ Further, the Carousel lease provides that "Landlord agrees to make reasonable efforts to relet the Premises, however, Landlord will not have to give the Premises preference over any other vacant space in the Shopping Center." Carousel lease § 15.02(a). "In an action for breach of contract the plaintiff must show that he has done what he was required to do." *Ruane v. Smith,* 5 Misc.2d 366, 159 N.Y.S.2d 859, 861 (N.Y.Sup.Ct.1957). Therefore, because the lease required Carousel to make reasonable efforts to mitigate, Carousel will bear the burden at an evidentiary hearing to demonstrate it made reasonable efforts to mitigate its damages by reletting the premises.

#### C. The Landlords' claims for future rent damages must be reduced to present value.

The Trustee argues that the Landlords bear the burden of proving that they were damaged by her rejection of the leases. Trustee further argues that she is entitled to a presumption that the Landlords could have relet the premises for the amounts provided in the leases.

■ A proof of claim constitutes prima facie evidence of its validity and amount. *See* Fed.R.Bankr.P. 3001(f); 11 U.S.C. § 502(a). To overcome the prima facie validity of a claim, an objecting party must produce evidence equal in probative force to the proof of claim. *See In re Gates,* 214 B.R. 467, 472 (Bankr.D.Md.1997); *In re Fullmer,* 962 F.2d 1463, 1466 (10th Cir. 1992). Once the objector produces such evidence, the burden of going forward shifts to the claimant, who must prove the validity of its claim by a preponderance of the evidence. *See Gates* 214 B.R. at 472; *In the Matter of Ralph Marcantoni & Sons, Inc.,* 62 B.R. 245, 247 (D.Md.1986). Consequently, at an evidentiary hearing the Trustee will first have to present evidence equal in probative force to each Landlord's proof of claim. For each claim where she does so, the Landlord will bear the burden of persuasion as to the validity of its claim.

■ If Trustee meets her initial burden, she additionally will have a presumption that the Landlord could have relet the premises for the amount of the reserved rent, without loss. *See Palmer v. Connecticut Ry. & Lighting Co.,* 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336 (1941); *In re D.H. Overmyer Co., Inc. (Ohio) v. Irving Trust Co.,* 60 B.R. 391, 395 (S.D.N.Y.1986). A Landlord may overcome this presumption by showing that it was not able to relet the premises for at least the amount of the reserved rent. *See Overmyer,* 60 B.R. at 395. If a Landlord is not able to make such a showing at an evidentiary hearing, its claim must be disallowed.

■ Although Trustee espouses a federal theory of damages which has been adopted in other districts, *see e.g. In re Child World, Inc.,* 161 B.R. 349 (Bankr. S.D.N.Y.1993), this court and the Fourth Circuit have both held in this case that the Landlords' future rent claims should be calculated in accordance with applicable state law. *See Merry–Go–Round,* 208 B.R. at 645 (citing *Butner,* 440 U.S. at 55, 99 S.Ct. 914). *See also Cutler Ridge,* 180 F.3d at 161–62; *In re Merry–Go–Round Enters., Inc.,* 1996 WL 69688, *2 (Bankr. D.Md.). If there is a conflict between the

Bankruptcy Code and applicable state law, state law must be suspended only to the extent it conflicts with the Code. *See Butner*, 440 U.S. at 54 n. 9, 55, 99 S.Ct. 914. Consequently, in calculating rejection damages the court will apply the laws of the states where the properties are located, unless, as does not appear here, those laws are in conflict with provisions or fundamental policy of the Bankruptcy Code.

### 1. Sharpstown

▇ As noted previously, the Sharpstown Mall is located in Texas, and the lease provides that Texas law controls. Under Texas law a landlord's "measure of damages usually is the contractual rental provided in the lease, less the amount realized from the reletting." *Maida v. Main Building of Houston*, 473 S.W.2d 648, 651 (Tex.Civ.App.1971, no writ). *See also Austin Hill*, 948 S.W.2d at 300 (*dicta* ).

In *Austin Hill* the Supreme Court of Texas held for the first time that a landlord has a duty to mitigate damages for breach of a lease. To ensure uniform application of this newly identified duty, the court, in *dicta*, discussed several rules that should be applied. *See id.* at 299–300. One of those rules is that a landlord who repossesses property may "sue for the *present* value of future rentals reduced by the reasonable cash market of the property for the remainder of the lease term." *See id.* at 300 (emphasis supplied). However, if a landlord relets the premises for a portion of the lease period, his damages for that period are the contractual rent less the amount received from reletting the premises. *See id. See also Maida*, 473 S.W.2d at 651. These rules, however, are based on the presumption that under Texas law the landlord would be suing the tenant periodically as rent accrues. *See Maida*, 473 S.W.2d at 652.

▇ A landlord in Texas would not be able to sue a tenant in bankruptcy under Chapter 7 on a monthly basis. It must file a claim for its total damages, including anticipated future damages, by a deadline. Fed.R.Bankr.P. 3002(c). When a party is awarded future damages, the damages must generally be reduced to present value. *Chesapeake & Ohio Ry. Co. v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916) (when a verdict awards damages that will occur in the future they will be reduced to present value). *See* 22 Am.Jur.2d, Damages § 678 (1988). It is the opinion of this court that Texas courts would limit future rent damages to the present value thereof. *See Austin Hill*, 948 S.W.2d at 300. Consequently, Sharpstown's lease rejection damage claim will be reduced to its present value.

### 2. Northland

▇ Northland Mall is located in Michigan, and its lease provides that Michigan law applies. Under Michigan law the measure of damages for a breach of a lease is the present value of the amount owed under remaining term of the lease, minus the fair rental value. *See Leo v. Pearce Stores Co.*, 57 F.2d 340, 341 (E.D.Mich.1932). This is the standard the court will apply at any evidentiary hearing.

### 3. Lake County and Eastland

▇ Both Glenbrook Mall and Eastland are located in Indiana and, as discussed above, Indiana law applies. The damages under Indiana law are the "difference between the rent reserved in the lease and the reasonable rental value of the premises for that term or the actual rent procured by a subsequent reletting." *Rauch v. Circle Theatre*, 176 Ind.App. 130, 138, 374 N.E.2d 546, 552 (1978). Further, Indiana law requires that awards of future damages must be reduced to present value. *See Eden United, Inc. BFC v. Short*, 653 N.E.2d 126, 135 (Ind.App.1995). Therefore, Lake County's claim for Glenbrook Mall and Equitable's claim for Eastland will be the difference between the amount of rent owed under the lease minus the reasonable rental value or the amount at which Lake County or Equita-

ble was able to relet the premises, reduced to the present value of the future damages.

### 4. Carousel

■ The Carousel lease contains provisions discussing the calculation of damages in a bankruptcy context. Where a lease specifically enumerates how a landlord's damages should be calculated if the tenant is in bankruptcy, a court should follow the provisions of the lease. *See In re Andover Togs, Inc.*, 231 B.R. 521, 533 (Bankr. S.D.N.Y.1999). A filing of bankruptcy is considered a default under the lease. *See* Carousel lease § 15.01(a)(iv). The lease further provides that if MGRE is in default, Carousel can terminate the lease. *See id.* § 15.01(b). Trustee argues that Carousel did not terminate the lease and that Carousel cannot rely upon the lease to determine its damages unless the lease has been terminated.

■ Because the determination of property rights is governed by state law, the court must look to New York law to determine if the Carousel lease was terminated. *See In re Steven Windsor, Inc.*, 201 B.R. 133, 135 (Bankr.D.Md.1996). Under New York law, termination by repudiation or surrender may occur by operation of law. *See Gotlieb v. Taco Bell Corp.*, 871 F.Supp. 147, 152 (E.D.N.Y.1994). Acceptance of a surrender has been found to constitute the termination of a lease in situations that have fallen short of the landlord reletting the property. *See id.* at 152–53. Here, Carousel alleges that it has relet the premises. If Carousel can show at an evidentiary hearing its acceptance of a surrender by releasing, Carousel will have terminated the lease and the lease's termination provision will apply. The termination damage provision of the Carousel lease provides:

> ... Landlord shall, at its option, be entitled to recover from Tenant in addition to all other relief to which it is entitled under this Lease, such a sum *as at the time of such termination* represents the amount of the then *present value* of the total Fixed Annual Minimum Rent, Percentage Rent and Additional Rent and other benefits which would have accrued to Landlord under this Lease for the remainder of the lease term, as if the Lease had been fully complied with by Tenant.

> In the event the Premises are relet by Landlord, Tenant shall be entitled to a credit (but not in excess of Fixed Annual Minimum Rent, Percentage Rent and Additional Rent reserved under the terms of the Lease) in the net amount of rent received by Landlord in reletting the Premises after deduction of all reasonable expenses and costs incurred or paid as aforesaid in reletting the Premises and in collecting the rent in connection therewith.

Carousel lease Rider § 15.02(c) (emphasis added). Consequently, as of the time Trustee rejected the lease, Carousel is entitled under the lease terms to the present value of the remainder of the lease term, minus whatever it recovered by a reletting of the premises.

A possible remaining issue, except for the Carousel claim which is controlled by lease terms, is as of what date should discounted future rent claims be calculated. Should it be as of the date of rejection, as of the date of payment, or as of the date a ruling is entered on the objection. Alternatively, the issue might be viewed as whether interest should be paid on discounted lease rejection claims for future rent. The parties orally argued the respective equities, but the precise issue has not been fully briefed.

The only case cited by a party was *In re Allegheny Int'l, Inc.*, 136 B.R. 396, 405 (Bankr.W.D.Pa.1991), affirmed 145 B.R. 823 (W.D.Pa.1992), but this case is neither directly applicable nor exhaustive. It did not involve an assumed postpetition lease claim, but rather a claim for rejection of a prepetition lease that exceeded the 11 U.S.C. § 506(b)(6) cap, apparently even after discounting. Payment of the claim un-

der a confirmed plan was delayed, and the courts relied on equitable considerations to award interest. *Allegheny Int'l,* 136 B.R. at 410 and 145 B.R. at 826. Equitable considerations are inherently factual. Consequently, the court will not rule at this time on the issue as a matter of law. The court will defer ruling on the law and facts of this present value calculation date/interest issue until it has been more fully briefed and after an evidentiary hearing.

## Conclusion

For the preceding reasons, the following conclusions of law will apply at an evidentiary hearing on the Trustee's objection to the claims of the Landlords. First, the assumed leases of the Landlords are both actual and necessary expenses of the MGRE estate, and the Landlords' rejection damage claims are Chapter 11 administrative expenses.

Second, by lease terms or relevant state law, the Landlords are required to mitigate their lease rejection damages. Except for Lake County and Carousel, the Trustee bears the burden of persuasion that the Landlords did not properly mitigate.

Finally, the Landlords will have the burden of proving the amounts of their lease rejection damage claims, and their claims must be reduced to present value. The measure of their damages is generally the present value of the amount owed for the remainder of the lease term, minus the fair market value of the property.

Therefore, for the reasons stated above, it is this 15th day of October, 1999, by the United States Bankruptcy Court for the District of Maryland,

DECLARED, that the preceding discussion constitutes the court's conclusions of law to be applied in ruling on the Trustee's Twelfth Omnibus Objection to Claims.